Sixth Division
December 19, 2008

No. 1-07-2994

| | |
|---|---|
| CLARENDON AMERICA INSURANCE COMPANY, a New Jersey Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | |
| B.G.K. SECURITY SERVICES, INC., an Illinois Corporation, | ) ) ) | 04 CH 10575 |
| Defendant-Appellee | ) ) | |
| (Aargus Security Systems, Inc., an Illinois Corporation, 69 West Washington Management LLC, an Illinois Limited Liability Corporation, and County of Cook, a Body Politic and Corporation, Defendants; | ) ) ) ) ) ) | |
| Scottsdale Insurance Company, Intervenor). | ) ) ) | Honorable William Maki, Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Clarendon America Insurance Co. (Clarendon) filed a declaratory judgment action seeking a determination that it owed no duty to defend or indemnify defendant B.G.K. Security Services, Inc. (BGK), in several underlying lawsuits arising out of the October 17, 2003, fire that occurred at a building owned by defendant County of Cook (Cook) and managed by defendant 69 West Washington Management, LLC (69 West), located at 69 West Washington Street in Chicago. BGK, along with defendant Aargus Security Systems, Inc. (Aargus), supplied security to the building. Clarendon issued a commercial general liability (CGL) policy to BGK. Intervenor Scottsdale Insurance Company (Scottsdale) issued an excess insurance policy to BGK and intervened in the action also seeking a declaration that it had no duty to defend BGK. BGK

filed a motion for a partial summary judgment and Clarendon also filed a motion for summary judgment in the trial court. The court granted BGK's motion for partial summary judgment and denied Clarendon's motion for summary judgment.[1]

Clarendon appeals, arguing that (1) the trial court erred in finding that BGK was an insured under the policy because BGK entered into a joint venture with Aargus and the Clarendon policy excludes coverage for unnamed joint ventures; and (2) in the alternative, the trial court erred in granting summary judgment when the record was unclear as to BGK's status and Clarendon was not allowed to complete its discovery.

On April 1, 2002, Aargus entered into a contract, entitled "Agreement with Service Contractor" (hereafter, 69 West/Aargus Contract), with 69 West, acting as the manager and agent of Cook, to provide security guard service to the commercial high-rise building located at 69 West Washington Street in Chicago.

On June 17, 2002, Aargus and BGK entered into a contract entitled "Joint Venture Agreement, 69 West Washington Management Company, L.L.C., 69 West Washington, Chicago, IL 60602" (hereafter, Aargus/BGK Agreement) in which the parties agreed to jointly provide security guard service at the 69 West Washington building.

---

[1] Defendants Aargus, Cook and 69 West are not a party to this appeal. We have previously issued opinions as to Clarendon's duty to defend Cook and 69 West in Clarendon America Insurance Co. v. 69 West Washington Management, LLC, 374 Ill. App. 3d 580 (2007), and Aargus in Clarendon America Insurance Co. v. Aargus Security Systems, Inc., 374 Ill. App. 3d 591 (2007).

BGK obtained a CGL policy from Clarendon, effective January 21, 2003, to January 21, 2004. The "Named Insureds" on the Declarations page of the policy were "BGK Security Services, Inc. and Kates Detective Agency." The declarations page indicated that the "Named Insured" was a "corporation." The Clarendon policy provided $1 million of liability coverage per occurrence with a $5 million general aggregate limit. Scottsdale issued an excess liability policy to BGK, effective August 1, 2003, to January 21, 2004. The Scottsdale policy "is excess of and follows form to the Clarendon policy."

Clarendon's policy included the following "Insuring Agreement."

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

Clarendon's policy with BGK provided, in relevant part:

> "SECTION II—WHO IS AN INSURED
>
> 1. If you are designated in the Declarations as:
>
> * * *

b. A partnership or joint venture, you are an
insured. Your members, your partners, and their spouses
are also insureds, but only with respect to the conduct of
your business.

* * *

d. An organization other than a partnership, joint
venture or limited liability company, you are an insured.
Your 'executive offices' and directors are insureds, but only
with respect to their duties as your officers or directors.
Your stockholders are also insureds, but only with respect
as to their liability as stockholders.

* * *

4. Any organization you newly acquire or form, other than
a partnership, joint venture or limited liability company, and over
which you maintain ownership or majority interest, will qualify as
a Named Insured if there is no other similar insurance available to
that organization."

On October 17, 2003, a fire occurred at the 69 West Washington building. As a result of the deaths and injuries that occurred in the fire, 22 lawsuits were filed in the circuit court of Cook County and were consolidated under case No. 03 L 12520 (underlying lawsuits). Aargus, 69 West, Cook, and BGK were named as defendants, third-party defendants, and/or counter-

1-07-2994

defendants in the underlying lawsuits.

The complaint filed in <u>Luis Hernandez v. 69 West Washington Management Co., LLC.</u>, No. 03 L 14243, is representative of the allegations made against BGK in all of the underlying lawsuits. In the Hernandez complaint, three counts for negligence, negligent infliction of emotional distress and loss of consortium were directed at BGK individually. Each of those three counts began with the following allegations:

> "1. On October 17, 2003, and at all times mentioned herein, Defendant, BGK SECURITY SERVICES, INC. provided security for a certain commercial high rise building with stairwells at 69 West Washington Street in the City of Chicago, County of Cook and State of Illinois.
>
> 2. Prior to October 17, 2003, Defendant, BGK SECURITY SERVICES, INC. entered into a security services contract with Aargus Security Systems, Inc., to provide security for the building owned by the County of Cook, located at 69 West Washington Street in the City of Chicago, County of Cook and State of Illinois, and said contract was in existence on October 17, 2003.
>
> 3. On and prior to October 17, 2003, Defendant, BGK SECURITY SERVICES, INC. had a duty to employ care, skill and diligence in its provisions of security services of said building and stairwells."

5

The complaint made the following allegations of negligence against BGK:

"8. On October 17, 2003, Defendant BGK SECURITY SERVICES, INC., by its duly authorized agents and/or employees, was negligent in one or more of the following respects:

a. Failed to exercise reasonable care and diligence to individuals using the stairwells;

b. Failed to maintain a reasonably safe environment for invitees on said premises, including, but not limited to, the southeast stairwell;

c. Failed to properly prevent against mishap or injury on the southeast stairwell;

d. Failed to properly maintain and inspect the southeast stairwell;

e. Failed to warn LUIS HERNANDEZ that the southeast stairwell contained dangerous smoke and was not safe for passage;

f. Allowed the interior stairwell doors that lead to the hallway to remain locked from within, when said doors were the only practicable means of escaping smoke and fire;

g. Failed to open the interior stairwell doors for invitees' safe passaege;

h. Allowed LUIS HERNANDEZ to use the southeast

stairwell when Defendant knew or should have known that it was not safe to do so;

    i. Failed to properly instruct invitees, including LUIS HERNANDEZ as to emergency evacuation and exit procedures;

    j. Failed to properly assist individuals on the premises, including Plaintiff, out of the smoke-filled stairwells, when Defendant knew or should have known that individuals were trapped and injured;

    k. Failed to properly notify emergency personnel of the individuals within the building who were trapped and injured;

    l. Failed to properly plan, devise, instruct and implement an emergency evacuation plan, contingent on the inaccessibility of stairwells;

    m. Failed to plan, devise, instruct and implement an alternative emergency evacuation plan, contingent on the inaccessibility of stairwells;

    n. Failed to properly train employees regarding evacuation procedures;

    o. Negligently issued an evacuation order to all person in the building at 69 W. Washington;

    p. Failed to have mechanisms to automatically unlock

stairwell doors; and

q.  Was otherwise careless and negligent."

Similar allegations were made in the remaining counts against BGK.

In its answer to the Hernandez complaint, BGK admitted the allegations in paragraph 1, admitted that it had entered into a contract "relating to security" with Aargus and that said contract was in effect on October 17, 2003, but denied the remaining allegations in paragraph 2, and admitted it had duties imposed under Illinois law, but denied that the duties listed in paragraph 3 were complete and accurate.

BGK tendered its defense in the underlying lawsuits to Clarendon.  In February 2005, Clarendon filed its amended complaint for a declaratory judgment seeking a determination that it had no duty to defend its insured, BGK.  In its complaint, Clarendon asserted the work performed by BGK at the 69 West Washington building was part of a joint venture with Aargus and that "a joint venture is not an insured as that term is defined under the Policy."  (Emphasis in original.) BGK denied the existence of a joint venture and maintains this denial on appeal.

In May 2005, BGK filed its motion for partial summary judgment.  In September 2005, BGK filed for chapter 11 bankruptcy protection in the Northern District of Illinois.  As a result of that filing, an automatic stay was entered as to BGK.  The United States Bankruptcy Court of the Northern District of Illinois dismissed BGK's bankruptcy in September 2006.  In June 2007, Clarendon filed its motion for summary judgment against BGK.  In July 2007, following oral arguments on the motions, the trial court granted BGK's motion for partial summary judgment on counts I and II of the Clarendon's complaint for declaratory judgment and denied Clarendon's

motion for summary judgment. The court also stayed ruling on the duty to indemnify as premature. This appeal followed.

On appeal, Clarendon argues that the trial court should have considered the Aargus/BGK Agreement in addition to the underlying complaints and Clarendon's policy to determine the existence of a joint venture between Aargus and BGK to which Clarendon's policy contains a provision excluding unnamed joint ventures. BGK maintains that it is entitled to a defense because the underlying complaints allege negligence against BGK Security Services, Inc., not the joint venture, and BGK Security Services, Inc., is the "Named Insured" in Clarendon's policy.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We review cases involving summary judgment de novo. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998). "As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339 (2005).

"In determining whether an insurer is obligated to defend its insured, we generally compare the allegations of the underlying complaint to the relevant provisions of the insurance

policy." Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp., 304 Ill. App. 3d 734, 738 (1999). "If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill. 2d 96, 98 (2000). "As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured." United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d 955, 963 (2005). "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." Dare, 357 Ill. App. 3d at 963-64. Further, "if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 155 (2005).

"The insurer's duty to defend is much broader than its duty to indemnify its insured." Crum & Forster Managers Corp., 156 Ill. 2d at 393-94. The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. Crum & Forster Managers Corp., 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." Crum & Forster Managers Corp., 156 Ill. 2d at 391.

Clarendon contends that the trial court should have considered the Aargus/BGK Agreement in addition to the underlying complaints and its policy for three reasons. First, the underlying complaints did not provide sufficient facts to state a cause of action and the Aargus/BGK Agreement would have provided additional facts. Second, the determination as to the duty to defend would have no effect upon the underlying plaintiff's claims or BGK's defense in the underlying litigation. Third, BGK's "insured" status is not an issue critical to the underlying litigation. Clarendon asserts that when the Aargus/BGK Agreement is considered, it is clear that BGK was acting as a member of a joint venture. BGK maintains that the underlying complaints named BGK Security Services, Inc., as a party, not the joint venture, and BGK Security Services, Inc., is the "Named Insured" in the Clarendon policy.

Looking at the underlying complaints and Clarendon's policy, it is clear that a potential for coverage exists. Clarendon's "Named Insured," BGK, was sued directly in the underlying lawsuits for its own alleged negligence during the fire. None of the underlying complaints name BGK as a defendant in its capacity as a joint venturer. It is only when extrinsic evidence is considered, as Clarendon advocates, that BGK's status as insured is questioned.

Clarendon argues that while, generally, it is true that an insurer's duty to defend flows in the first instance from the allegations of the underlying complaint, this general rule does not support the proposition that a court, in a declaratory judgment proceeding where an insurer's duty to defend is at issue, may never look beyond the allegations of the underlying complaint. Ace-Chicago, 304 Ill. App. 3d at 742, citing Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 304 (1983). We agree with the above-stated principle.

11

However, Illinois courts have restricted consideration of extrinsic evidence when it involves an "ultimate fact," meaning a fact that "would estop the plaintiff in the underlying case from pursuing one of his theories of recovery" or one in which " 'an issue crucial to the insured's liability' in the underlying case is determined." Envirodyne, 122 Ill. App. 3d at 307; see also Ace-Chicago, 304 Ill. App. 3d at 742-43, Thornton v. Paul, 74 Ill. 2d 132 (1979), Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187 (1976).

Clarendon contends that consideration of the Aargus/BGK Agreement is necessary to find that BGK was part of a joint venture and will not determine an ultimate fact in the underlying litigation. We disagree. "A joint venture is an association of two or more persons to carry out a single enterprise for profit." Groark v. Thorleif Larsen & Son, Inc., 231 Ill. App. 3d 61, 66 (1992). "A joint venture is not regarded as identical with a partnership, although, as a practical matter, the only distinction between the two entities is that a joint venture relates to a single specific enterprise or transaction while a partnership relates to a general business of a particular kind." Groark, 231 Ill. App. 3d at 66. "A joint venture, like a partnership, is liable to third persons for wrongful acts of its venturers done in the course of the joint venture agreement." Groark, 231 Ill. App. 3d at 66.

Clarendon cites to the supreme court's decisions in Nelson v. Union Wire Rope Corp., 31 Ill. 2d 69 (1964), and Pippin v. Chicago Housing Authority, 78 Ill. 2d 204 (1979), for the proposition that BGK's duty was limited by the extent of its undertaking. In Clarendon's view, the undertaking was the 69 West/Aargus Contract to provide security and BGK's participation arose only due to its joint venture status under the Aargus/BGK Agreement. This argument

misses a key point made by the supreme court in <u>Nelson</u>.

The supreme court in <u>Nelson</u> pointed out the defendant's liability was "not limited to such persons as might have relied upon it to act but extends instead to such persons as defendant could reasonably have foreseen would be endangered as the result of negligent performance." <u>Nelson</u>, 31 Ill. 2d at 86. "It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." <u>Nelson</u>, 31 Ill. 2d at 86.

The allegations in the underlying action are not based on BGK's obligations under the contract with Aargus but, instead, claim that BGK had a duty to exercise care, skill and diligence, but negligently failed to do so. Clarendon's argument asks this court to add allegations to the complaint that the contract was the source of BGK's negligence.

If we were to consider the Aargus/BGK Agreement to hold that BGK was engaged at the 69 West Washington building as part of a joint venture, such a finding would clearly impact BGK's liability in the underlying litigation, which is prohibited. A determination of a joint venture in this declaratory judgment action could mandate liability findings against Aargus and BGK in the underlying litigation for each entity's actions, even though the allegations in the underlying complaints were pled against them as separate defendants. BGK denies the existence of a joint venture and it would now be required to defend itself against those allegations. This is precisely the kind of situation in which an "ultimate fact" would be determined at the declaratory

13

judgment stage and affect the insured's liability in the underlying litigation. Such a finding would require BGK to address liability claims as related to a joint venture in this action. However, "declaratory judgment should not be used to force the parties to an injury action to have a 'dress rehearsal' of an important issue expected to be tried in the injury action." State Farm Fire & Casualty Co. v. Shelton, 176 Ill. App. 3d 858, 865 (1988), citing Employers' Fire Insurance Co. v. Beals, 103 R.I. 623, 240 A.2d 397 (1968). Accordingly, we cannot look beyond the allegations in the underlying complaints and Clarendon's policy provisions to determine a duty to defend.

Further, even if we were to consider the Aargus/BGK Agreement, the provision in the policy relied upon by Clarendon to negate BGK's status as an insured is ambiguous.

"It is the insurer's burden to show that a claim falls within a provision of the policy that excludes coverage, and an exclusion relied upon to deny coverage must be free and clear from doubt." West Bend Mutual Insurance Co. v. Rosemont Exposition Services, Inc., 378 Ill. App. 3d 478, 486 (2007). "All the provisions of an insurance policy must be read together to determine whether an ambiguity exists, and any ambiguity will be construed against the drafter of the policy and in favor of coverage." West Bend, 378 Ill. App. 3d at 486. "When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 153 (2004). An insurance contract is to be construed as a whole, giving effect to every provision because it must be assumed that every provision was intended to serve a purpose. Central Illinois Light Co., 213 Ill. 2d at 153. " If the words used in

the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Central Illinois Light Co., 213 Ill. 2d at 153. "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair & Co. v. FI Liquidation Corp., 358 Ill. App. 3d 324, 334 (2005). "A contract is not ambiguous, however, if a court can ascertain its meaning from the general contract language." William Blair, 358 Ill. App. 3d at 334. "[T]he mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." William Blair, 358 Ill. App. 3d at 334.

Clarendon points to this provision in its policy to exclude BGK as an insured.

"No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

Clarendon interprets this provision to exclude BGK from coverage in the underlying litigation based on its agreement with Aargus. However, the entity whose "conduct" is at issue is BGK Security Services, Inc., because BGK Security Services, Inc., is the named defendant. The underlying complaints do not mention the "conduct" of a joint venture between Aargus and BGK. Further, Clarendon's interpretation adds additional limiting language to this provision because nothing in the provision requires the organization indicated as the "Named Insured" to be named as the joint venture.

We note that Clarendon has relied on several out-of-state cases to support its

interpretation that the claim falls within the joint venture provision, but none of the cited cases presented a similar factual situation. We point out that "cases from foreign jurisdictions are not binding on this court." Mikrut v. First Bank of Oak Park, 359 Ill. App. 3d 37, 58 (2005).

In Austin P. Keller Construction Co. v. Commercial Union Insurance Co., 379 N.W.2d 533 (Minn.1986), the Supreme Court of Minnesota looked at a different exclusionary provision in an indemnification action. There, the insured sought coverage for a past joint venture that was not named in the policy. The exclusion said: "This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured." Keller, 379 N.W.2d at 534. This exclusionary language is narrower than the language at issue in the present case as it specifically states that it refers to joint ventures in which the insured is a member. In W.S.A., Inc. v. Liberty Mutual Insurance Co., 7 F.3d 788 (8th Cir. 1993), the Eighth Circuit Court of Appeals considered the same exclusionary language as in Keller in an action concerning a breach of insurance contract. The sole question before the court was whether the insured was part of a joint venture that was not named in the policy. The Fifth Circuit Court of Appeals in Bott v. J.F. Shea Co., 299 F.3d 508 (5th Cir. 2002), considered the same language present in the instant case in an indemnification action. In that case, an employee was injured at a construction site and he sued the joint venture and one of the companies that formed the joint venture for negligence. The joint venture filed a third-party complaint against the employer of the injured man and sought coverage as an additional insured under the employer's policy. However, the joint venture was not named as an additional insured, only one of the companies

that formed the joint venture was listed. In contrast, our case is only at the duty to defend stage, not indemnification, and the joint venture was not named in the underlying litigation.

The New York Supreme Court, Appellate Division, Second Department in Catholic Health Services of Long Island, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa, 46 A.D.3d 590, 592, 847 N.Y.S.2d 638, 640 (N.Y. App. Div. 2007), reviewed a question regarding a duty to defend when the joint venture was the target of an investigation, but was not a named insured on the subject policy. However, the court never considered an exclusion and simply held that since the investigation was aimed at the joint venture, it was not covered. None of these cases involved a duty to defend in which the insured was named in the underlying litigation and the insurer was seeking to deny coverage based on extrinsic evidence of a joint venture.

Finally, Clarendon raises an alternative argument that summary judgment was improper because BGK's status as a member of a joint venture is not free from doubt and the parties should be permitted to participate in discovery on this issue. However, we have already concluded that considering extrinsic evidence to determine whether BGK was acting as part of a joint venture is inappropriate at the duty to defend stage as that finding could expose BGK to additional liability in the underlying litigation. Therefore, no further discovery is necessary and Clarendon's argument fails.

Based on all of the foregoing, we find the trial court properly held that Clarendon has a duty to defend and we affirm the decision of the circuit court of Cook County.

Affirmed.

O'MALLEY, P.J. and CAHILL, J., concur.

17