# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Erie Insurance Exchange v. Imperial Marble Corp.*, 2011 IL App (3d) 100380

| | |
|---|---|
| Appellate Court Caption | ERIE INSURANCE EXCHANGE, Plaintiff-Appellee, v. IMPERIAL MARBLE CORPORATION, Defendant-Appellant and Third-Party Plaintiff (Somonauk Insurance Agency, Inc., Third-Party Defendant). |
| District & No. | Third District<br>Docket No. 3-10-0380 |
| Filed | September 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff insurer had a duty to defend its insured on the claims asserted in an underlying class action for personal injury and property damage purportedly caused by the emissions from the insured's manufacturing operations involving the use of styrene and methyl methacrylate, since the emissions were authorized under a permit issued by the Illinois Environmental Protection Agency and it was unclear whether the permitted emissions constituted traditional environmental pollution that was excluded under the policy plaintiff issued. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 07-CH-796; the Hon. James A. Lanuti, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Brent W. Vincent (argued) and Donald A. Cole, both of Bryan Cave LLP, of Chicago, for appellant.

Bruce M. Lichtcsien (argued), of Hinkhouse, Williams & Walsh, of Chicago, for appellee.

Panel

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Schmidt and Holdridge concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff Erie Insurance Exchange filed a declaratory judgment action seeking a declaration that it did not have a duty to defend or indemnify under a comprehensive general liability (CGL) policy it issued to defendant Imperial Marble Corporation in an underlying class action lawsuit for personal injury and property damage purportedly due to emissions from Imperial's manufacturing operations. Imperial asserted estoppel as an affirmative defense and filed a counterclaim seeking a declaration that Erie owed it a defense and indemnification, and for breach of contract based on Erie's denial of coverage. Both parties moved for summary judgment and the trial court granted Erie's motion on Imperial's counterclaim and its affirmative defense, and denied Imperial's motion. Imperial appealed. We reverse and remand.

¶ 2                                    FACTS

¶ 3      Plaintiff Erie Insurance Exchange sought a declaration from the trial court that it had no duty to defend defendant Imperial Marble Corporation in the underlying action filed against it by homeowners residing within one mile of Imperial's manufacturing plant. Imperial Marble manufactures cultured marble vanities, countertops and other synthetic products at its facility in Somonauk. Along with other chemicals, Imperial uses styrene and methyl methacrylate (MMA) in its manufacturing processes which create odorous emissions that are dispersed into the atmosphere. The emissions are authorized under a permit issued by the Illinois Environmental Protection Agency (IEPA) in compliance with the federal Clean Air Act (CAA) (42 U.S.C. § 7401 *et seq.* (2006)); 415 ILCS 5/39.5(3), (9) (West 2006).

¶ 4      Imperial's permit was issued on November 21, 2002, and modified on May 8, 2006. In February 2007, Imperial submitted a permit renewal application that was still under evaluation at the time the briefs were filed. Imperial's permit prohibits emissions of particulate matter that block more than 30% of the available sunlight (35 Ill. Adm. Code 212.123 (2011)); precludes discharge of more than eight pounds of organic material into the

atmosphere from any one emission unit (35 Ill. Adm. Code 215.301 (2011)); requires compliance with all other applicable state and federal regulations; and includes a permit shield which "provides that compliance with the conditions of this permit shall be deemed compliance with applicable requirements which were applicable as of the date the proposed permit for this source was issued." See 415 ILCS 5/39.5(7)(j) (West 2006); 42 U.S.C. § 7661c(f) (2006).

¶ 5    Erie issued a CGL policy to Imperial in 2002 with effective dates of December 31, 2002, to December 31, 2003. The policy was renewed for several terms, including December 31, 2006, to December 31, 2007, the policy term that covers the May 2007 filing of the underlying action. Imperial procured the policy through Dennis Wiley of the Somonauk Insurance Agency, an independent insurance brokerage that represents Erie per a written agency agreement. The written agency agreement provided that Somonauk, on behalf of Erie, quote and bind coverage; bill and accept premium payments; accept and deliver policy applications, renewals and notices; issue insurance cards and additional insured certificates; accept notices of claims; and assist Erie in claim investigation and handling. Somonauk performed these functions for Imperial and served as the primary vehicle for communication between Imperial and Erie.

¶ 6    The policy issued to Imperial included the following pertinent provisions. The policy's insuring agreement provided, in part:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

The policy states that the insurance applies to bodily injury and property damage "caused by an 'occurrence' that takes place in the 'covered territory' " and "occurs during the policy period." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 7    The policy includes the following exclusions:

"This insurance does not apply to:

a. Expected or Intended Injury

'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. ***

* * *

f. Pollution

(1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."

¶ 8    To secure adequate insurance for Imperial, Wiley procured the assistance of Jeff Porter,

Erie's district sales manager. Both Wiley and Porter had extensive contact with Imperial when determining Imperial's coverage, including interviewing Imperial management and touring the facility. Neither Porter nor Wiley informed Imperial of the pollution exclusion in the policy or identified Imperial's emissions as subject to a gap in coverage. Imperial believed it had purchased "all risk insurance" and was fully covered. In 2003, 2005, and 2007, Erie employees Brandon Cooper and Robert Simmons conducted loss control inspections at Imperial's facility. Following each inspection, they prepared detailed reports and sent a letter to Imperial offering recommendations to limit liability. Coverage gaps or other issues regarding Imperial's emissions were not mentioned.

¶ 9        In August 2007, the underlying plaintiffs, individually and as putative representatives of all others who resided within one mile of Imperial's plant, filed a class action complaint asserting negligence, trespass and nuisance. The complaint alleges, *inter alia*, personal injuries and property damage resulting from the invasion of the plaintiffs' person and property "by noxious odors, volatile organic materials (VOMs) and hazardous air pollutants (HAPs), including, but not limited to STYRENE and Methyl Methacrylate (MMA), air contaminants and other hazardous material" in the emissions generated, *inter alia*, "as part of Imperial's normal business operations." The complaint also alleges that Imperial emitted VOMs and HAPs in violation of IEPA regulations and released more than the amounts of VOMs and HAPs allowed under its permit. The complaint also alleges that Imperial knew or should have known, and was aware of, expected, and intended the emissions to occur.

¶ 10        Erie denied coverage of the underlying action in October 2007 and thereafter filed this declaratory action seeking a determination that it had no duty to defend or indemnify Imperial based on the policy's expected or intended injury and pollution exclusions. In response, Imperial asserted an affirmative defense of estoppel and filed a counterclaim seeking a declaration that Erie owed it a defense and indemnification in the underlying action (count I) and breach of contract for improperly denying coverage (count II). Imperial does not seek a defense for count II and it is not at issue in this appeal. Imperial also filed a third-party complaint against Somonauk and amended its counterclaim against Erie adding an allegation that Erie and its agents, Wiley and Porter, were negligent in failing to procure it adequate coverage.

¶ 11        Imperial filed a motion for partial summary judgment on Erie's declaratory action and on counts I and II of its amended counterclaim, seeking a finding that Erie owed it a defense in the underlying action. Erie filed a cross-motion for summary judgment, seeking a declaration that it did not owe Imperial a duty to defend or indemnify. The primary issue in the summary judgment motions was whether Imperial's emissions constitute traditional environmental pollution that are precluded under the policy's pollution exclusion. After a hearing on the parties' motions, the trial court held that Imperial's emissions constituted traditional environmental pollution and that coverage was precluded under the policy's pollution exclusion. The trial court looked to the allegations in the underlying complaint which characterized Imperial's emissions as hazardous and migrating off of Imperial's premises. The trial court rejected Imperial's argument that under the CAA and IEPA the emissions were neither pollution nor hazardous. The trial court further found that it was inappropriate to replace the language in the policy's pollution exclusion with the definition

of pollution under the United States Environmental Protection Agency (USEPA) and the IEPA. The trial court stated:

> "I think the Complaint itself, which is the underlying issue here, filed by the citizens, is alleging contamination, noxious odors, etcetera, and that's enough to constitute traditional environmental pollution."

The trial court denied Imperial's estoppel defense, finding that Erie had not made any affirmative misrepresentations to Imperial regarding coverage for its emissions. The trial court awarded summary judgment to Erie on its declaratory action and denied Imperial's summary judgment motion seeking a duty to defend and asserting an estoppel defense. Imperial appealed.

¶ 12                                    ANALYSIS

¶ 13    Imperial raises two issues on appeal: whether the trial court erred in granting summary judgment for Erie on the coverage issue and whether it erred in denying Imperial's estoppel defense.

¶ 14    The first issue raised by Imperial is whether the trial court erred in granting summary judgment to Erie on the issue of coverage. Imperial argues that the underlying complaint alleges an "occurrence" under the policy, and that the expected or intended injury and pollution exclusions do not apply to bar coverage. Imperial challenges the trial court's finding that the policy's pollution exclusion precluded coverage, arguing that because its emissions were allowed under its IEPA permit, they are neither pollution nor hazardous. It argues that coverage for the underlying action is not precluded under the policy's pollution exclusion and Erie owes it a duty to defend the underlying action.

¶ 15    Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); *DeSaga v. West Bend Mutual Insurance Co.*, 391 Ill. App. 3d 1062, 1066 (2009). The interpretation of an insurance policy is a question of law that may be decided on a motion for summary judgment. *DeSaga*, 391 Ill. App. 3d at 1066. This court reviews a trial court's determination on a motion for summary judgment and the interpretation of an insurance policy *de novo*. *DeSaga*, 391 Ill. App. 3d at 1066; *Whiting v. Prestige Casualty Co.*, 238 Ill. App. 3d 376, 377 (1992).

¶ 16    To determine an insurer's duty to defend, the court must look to the allegations of the underlying complaint and if it alleges facts within or potentially within policy coverage, the insurer is obligated to defend the insured, even if the allegations are groundless, false or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). If the underlying complaint alleges multiple theories of recovery, the duty to defend arises even if only one theory is within the policy's potential coverage. *Wilkin Insulation Co.*, 144 Ill. 2d at 73. A trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action. *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1031 (2008). The threshold for pleading a duty to defend is low so any doubt should be resolved

in favor of the insured. *Holabird*, 382 Ill. App. 3d at 1023 (citing *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005)). In determining whether there is a duty to defend, courts will liberally construe the underlying complaint and insurance policy in favor of the insured, and all doubts and ambiguities will be resolved in favor of extending coverage to the insured. *Clarendon America Insurance Co. v. B.G.K. Security Services, Inc.*, 387 Ill. App. 3d 697, 703 (2008).

¶ 17 We begin our analysis with the determination that the underlying complaint alleges an occurrence that potentially falls under the policy's coverage. The policy's insuring agreement provides that it applies to bodily injury and property damage "caused by an 'occurrence' that takes place in the 'covered territory' " and "occurs during the policy period." The underlying action is a civil proceeding, alleging negligence, trespass and nuisance for bodily injury and property damage within the policy period of December 31, 2006, to December 31, 2007. An "occurrence" as defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The complaint alleges an "ongoing, continuous, repeated, regular and uninterrupted" invasion of the complainants' persons and property by "odors and air contaminants." The complaint's allegations thus assert Imperial's emissions were "continuous or repeated exposure to substantially the same harmful conditions," as defined in the policy, and constitute an occurrence.

¶ 18 Erie submits that because the emissions were intentionally discharged, they do not constitute an accident and are not an occurrence under the policy. Erie is incorrect. Because the alleged bodily injury and property damage were unexpected results of Imperial's intended emissions, they constitute an accident under the policy. *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 409 (2004) ("The focus of the inquiry in determining whether an occurrence is an accident is whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." (Emphases in original.)). Imperial maintains that it had no intent to pollute as evidenced by its operation under an emissions permit. The underlying complaint does not allege under every count that Imperial intentionally discharged pollutants. Based on the language of the policy, we conclude that the underlying complaint alleges an occurrence that took place during the policy period and within the covered territory. Thus, under the policy's insuring agreement, coverage is available unless one of the policy's exclusions applies. Imperial argues that because its emissions are authorized by its permit, coverage is not precluded under either the expected or intended injury exclusion or the pollution exclusion.

¶ 19 The policy's expected or intended injury exclusion precludes coverage for bodily injury and property damage "expected or intended from the standpoint of the insured." We employ the same analysis in determining whether this exclusion applies as we used in deciding whether the underlying complaint alleged an occurrence under the policy language. As noted above, the focus is on whether the injury was expected or intended, not whether the act that caused the injury was expected or intended. *Lyons*, 349 Ill. App. 3d at 408. The allegations in the complaint assert that the underlying plaintiffs were injured as a result of Imperial's emissions and that Imperial knew or should have known such injuries were likely to occur. The underlying complaint does not allege solely that Imperial expected or intended to harm the underlying plaintiffs; rather, the allegations assert, in part, that Imperial emitted noxious

odors as part of its normal business operations. The complaint can reasonably be read as alleging harm caused, at least in part, by permitted emissions. The complaint additionally alleges Imperial's emissions violated the applicable IEPA regulations. Because Imperial operated pursuant to an emissions permit, it cannot be considered to have expected or intended to injure the underlying plaintiffs' persons or properties. We find that the expected or intended injury exclusion does not apply to preclude coverage.

¶ 20　　Our next determination is whether coverage is precluded under the pollution exclusion. Imperial submits that its emissions are not pollution as established by its IEPA permit. Imperial admits that it disperses emissions but claims that they do not qualify as hazardous or pollutants when dispersed in amounts in compliance with its permit. Imperial argues that because the underlying complaint alleges, in part, injury as the result of Imperial's normal business operations, which are pursuant to its permit, coverage is not precluded under the pollution exclusion, and Erie owes it a duty to defend the underlying action.

¶ 21　　The underlying complaint alleges that the plaintiffs' persons and properties were "physically invaded by noxious odors, volatile organic materials (VOMs) and hazardous air pollutants (HAPs), including, but not limited to STYRENE and Methyl Methacrylate (MMA), air contaminants and other hazardous material" in the emissions generated "as part of Imperial's normal business operations." The pollution exclusion bars coverage for: " '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.' " The policy defines "pollutants" as "[a]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical, and waste."

¶ 22　　The policy's pollution exclusion is arguably ambiguous as to whether the emission of hazardous materials in levels permitted by an IEPA permit constitute traditional environmental pollution excluded under the policy. In *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 489 (1997), the court rejected a literal interpretation of a pollution exclusion that was identical to the provisions in the instant policy, finding the exclusion ambiguous. In concluding that Erie did not owe Imperial a duty to defend, the trial court relied on *Connecticut Speciality Insurance Co. v. Loop Paper Recycling, Inc.*, 356 Ill. App. 3d 67 (2005), and considered that since Imperial's emissions migrated beyond its premises, they constituted traditional environmental pollution and were excluded under the policy. At this stage in the proceedings, it is not necessary to determine whether Imperial's emissions constitute traditional environmental pollution. Rather, we merely need to find that the policy's pollution exclusion is ambiguous as to this issue. As noted in *Koloms*, the pollution exclusion has a "potentially limitless application." *Koloms*, 177 Ill. 2d at 489. When the allegations in the underlying complaint are compared to the relevant provisions in the insurance policy, it is unclear whether permitted emissions constitute traditional environmental pollution that is excluded under the policy Erie issued to Imperial.

¶ 23　　Because we must resolve ambiguities in the complaint and policy in favor of Imperial, we find that Erie's duty to defend is implicated and hold that Erie owes a duty to defend Imperial on claims asserted in the underlying action. Our disposition of the coverage issue negates the need to address Imperial's estoppel argument. The trial court erred when it granted summary judgment in favor of Erie and against Imperial on Erie's duty to defend.

We reverse its decision and remand.

¶ 24        For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed and the cause remanded.

¶ 25        Reversed and remanded.