In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 24-1217 and 24-1223

GRIFFITH FOODS INTERNATIONAL INC., *et al.*,

*Plaintiffs-Appellees,*

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

*Defendant-Appellant.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
Nos. 1:21-cv-06403 & 1:21-cv-04581 — **Mary M. Rowland,** *Judge.*

———————

ARGUED SEPTEMBER 25, 2024 — DECIDED MARCH 13, 2026

———————

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. These appeals are back before us following our certification to the Illinois Supreme Court of an important question of Illinois law about the meaning and scope of a pollution exclusion in standard-form commercial general liability insurance policies. The insurance dispute arose in the broader context of highly publicized tort litigation stemming from substantial injuries, including cancer,

allegedly caused by emissions of ethylene oxide over the thirty-five-year period of 1984 through 2019 by Griffith Foods International and later Sterigenics U.S. in the Chicago suburb of Willowbrook, Illinois.

Our prior opinion provides more fulsome background and, before certifying the question of state law to the Illinois Supreme Court, reached a series of conclusions on various issues raised in these appeals. See *Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 134 F.4th 483, 485–92 (7th Cir. 2025). We reaffirm each of those conclusions and stand fully by all reasoning in our prior opinion. Today's opinion buttons up the appeals following the Illinois Supreme Court's decision resolving the certified question.

## I

The Illinois Supreme Court answered our certified question in unequivocal terms: "a permit or regulation authorizing emissions (generally or at any particular levels) has no relevance in assessing the application of a pollution exclusion within a standard-form commercial general liability policy." *Griffith Foods Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2026 WL 181277, at *1 (Ill. Jan. 23, 2026). That resolves this case. We now know that the pollution exclusion applies. See *Griffith Foods*, 134 F.4th at 490–93. Griffith and Sterigenics therefore "have no claim to coverage and no basis for requiring National Union to defend them against the allegations in the Master Complaint." *Id.* at 486.

Griffith and Sterigenics resist this conclusion. They urge us to hold that ambiguity predominated before the Illinois Supreme Court answered our certified question, thereby rendering the pollution exclusion inapplicable at the time they

tendered their defense in the underlying litigation. See *Ins. Co. of Ill. v. Markogiannakis*, 544 N.E.2d 1082, 1094 (Ill. App. Ct. 1989) ("[I]f an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt at the time the insurer is requested to defend, because any doubts as to coverage will be resolved in the insured's favor."). They add that *Erie Insurance Exchange v. Imperial Marble Corporation*, 957 N.E.2d 1214 (Ill. App. Ct. 2011), controlled this case until the Illinois Supreme Court overruled it in response to our certified question. On this view, the State High Court's response marked a watershed moment in Illinois law by eliminating prior ambiguity—legal uncertainty that, as Griffith and Sterigenics would have it, obligated National Union to defend them in the underlying tort cases.

Not so in our respectful view. We emphasized throughout our prior opinion that the best reading of Illinois law, especially in light of the State Supreme Court's 1997 decision in *American States Insurance Company v. Koloms*, 687 N.E.2d 72 (Ill. 1997), was that the pollution exclusion applied to bar both coverage and any duty to defend. See, *e.g.*, *Griffith Foods*, 134 F.4th at 484 ("Our own reading of *Koloms* suggests that the pollution exclusion applies."); *id.* at 491 ("This type of gradual and repeated discharge of hazardous substances into the environment, in our view, stands in stark contrast to the types of routine commercial hazards the *Koloms* Court thought absurd to include within the pollution exclusion." (cleaned up)); *id.* at 492 (describing an analogous case holding the exclusion applied as being "in line with our own natural reading of *Koloms*"). To be sure, we acknowledged that *Imperial Marble* "could be read" to foreclose that holding, making the opposite conclusion "possible." *Id.* at 491–92. But our decision to certify the question to the Illinois Supreme Court out of

respect for its authority on this issue should not be read as a declaration that *Imperial Marble* somehow controlled in the meantime.

And even on the view that *Imperial Marble* revealed at least some degree of ambiguity in Illinois law, the Illinois Supreme Court reached the opposite conclusion. We see not an ounce of uncertainty or equivocation in its holding that "the discharge of EtO emissions into the atmosphere at issue in this case fits squarely within" the "plain language" of the pollution exclusion. *Griffith Foods*, 2026 WL 181277, at *5. Put another way, the Illinois Supreme Court confirmed our own instinct that "the emissions fit squarely within the plain and ordinary meaning of 'traditional environmental pollution,'" triggering the pollution exclusion. *Id.* (quoting *Koloms*, 687 N.E.2d at 82). Leaving nothing to doubt, the Court punctuated its conclusion further by declining "to find an ambiguity where none exists." *Id.* (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). So do we.

## II

In a final effort to save its position, Griffith and Sterigenics contend there must have been ambiguity before the Illinois Supreme Court weighed in because National Union agreed to defend them during the pendency of this appeal. They attach four exhibits to their Rule 52(b) position statement and implore us to exercise our inherent authority to supplement the record. See *United States v. Miller*, 832 F.3d 703, 704 (7th Cir. 2016). We decline this invitation and instead follow the general rule disallowing "a party to add materials to the record on appeal which were not before the district court." *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001) (citing Fed. R. App. P. 10(e)). Resisting late-breaking

supplementation allows us to "review the decision that the trial court made in light of the information that was actually before it." *Id.* at 641. We reach no conclusions and offer no view on any aspect of the correspondence or arrangements between the parties during the pendency of this appeal.

**\* \* \***

For these reasons, and based on the conclusions reached and reasons supplied in our prior opinion of April 11, 2025, we REVERSE the district court's entry of judgment for Griffith and Sterigenics and REMAND with instructions to enter judgment for National in both cases before us in these appeals.