# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Country Mutual Insurance Co. v. Bible Pork, Inc.*,
### 2015 IL App (5th) 140211

</div>

| | |
|---|---|
| Appellate Court Caption | COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. BIBLE PORK, INC., an Illinois Corporation, Defendant-Appellee (Ruth E. Pierson, Della K. Jones, Dale E. Jones, Shirley K. Atchison, William Atchison, Jean Bailey, Robert D. Bailey, Jerry McKnelly, Paige Kincaid, Wilma Kuhlig, Nancy Leach, Joe Leach, Rose Ann Quandt, Theodore Quandt, Emma Jean Sachau, Lisa Sachau, Gary Sachau, Dorothy Schoonover, Glenn Schoonover, Terri Wolfe, and Edgar Wolfe, Defendants). |
| District & No. | Fifth District<br>Docket No. 5-14-0211 |
| Filed | November 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Clay County, No. 08-MR-14; the Hon. Daniel E. Hartigan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Keith G. Carlson, of Carlson Law Offices, of Chicago, and Douglas A. Enloe, of Gosnell, Borden, Enloe, Sloss & McCullough, Ltd., of Lawrenceville, for appellant.<br><br>Christopher A. Koester, of Taylor Law Offices, P.C., of Effingham, Julie A. Lierly, of Kilpatrick, Townsend & Stockton, LLP, of Atlanta, Georgia, and Alexander M. Bullock, of Kilpatrick, Townsend & Stockton, LLP, of Washington, D.C., for appellee. |

| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. |
|---|---|
| | Justice Chapman concurred in the judgment and opinion. |
| | Justice Moore dissented, with opinion. |

**OPINION**

¶ 1    Plaintiff, Country Mutual Insurance Company (Country Mutual), appeals from an order of the circuit court of Clay County entering summary judgment in favor of defendant, Bible Pork, Inc. (Bible Pork), a livestock producer and Country Mutual's longtime insured, after the parties filed cross-motions for summary judgment. The trial court found Country Mutual had a duty to defend Bible Pork in an underlying lawsuit, Pierson v. Bible Pork, Inc. (the underlying lawsuit), filed by 21 plaintiffs who owned property near Bible Pork's proposed hog factory facility. The underlying lawsuit sought to have the proposed facility declared a nuisance. In the instant case, the trial court entered judgment in the amount of $2,026,098.93, the cost of defending the underlying lawsuit, plus accrued interest in the amount of $480,068.96. The issue raised in this appeal is whether the trial court erred in finding Country Mutual had a duty to defend the underlying lawsuit. We affirm.

¶ 2                                    FACTS

¶ 3    In May 2005, Bible Pork began the process of seeking regulatory approval from the Illinois Department of Agriculture (Department) to construct a new hog factory facility in Clay County. Construction of such a facility requires compliance with the Livestock Management Facilities Act (Act) (510 ILCS 77/1 *et seq.* (West 2004)) and numerous other state regulations and requirements. Ultimately, the Department approved Bible Pork's plans and construction began in October 2005. It was completed and began operating as a lawfully permitted facility in June 2006.

¶ 4    During construction of the facility, 21 plaintiffs filed the underlying lawsuit against Bible Pork, seeking to have the facility declared a nuisance before it became operational. The plaintiffs in the underlying lawsuit insisted Bible Pork's facility would be a source of disagreeable noises, odors, dust particles, surface water contamination, and loss of property values which would interfere with their lives and render the facility a public and private nuisance. The plaintiffs amended their complaint twice. In all three complaints, the plaintiffs sought not only declarations that the facility constituted a public and a private nuisance, but also "such other relief as deemed appropriate." Bible Pork provided timely notice of the underlying lawsuit to its longtime insurer, Country Mutual, and asked for defense and indemnity under two separate policies, an Agriplus Farm Liability Policy (Agriplus policy) (No. A12L2576980) and a Farm Umbrella Liability Policy (umbrella policy) (No. AAU1631730).

¶ 5        The Agriplus policy was for the policy period of June 1, 2005, to December 1, 2005, and was a renewal of an earlier policy. It was renewed several times thereafter through June 1, 2009. The umbrella policy was for the policy period of January 25, 2005, to January 25, 2006, and was also a renewal of an earlier policy. The umbrella policy was also renewed several times through January 25, 2010. In a letter dated January 4, 2006, Country Mutual notified Bible Pork it was refusing to defend or indemnify Bible Pork in the underlying lawsuit under the Agriplus policy. Similarly, in a letter dated May 8, 2006, Country Mutual notified Bible Pork it was denying coverage under the umbrella policy.

¶ 6        Country Mutual denied coverage for three reasons: (1) the complaint in the underlying lawsuit sought only a declaratory judgment and did not seek damages for personal injury or property damage; (2) no bodily injury or property damage occurred during the policy period so there was no "occurrence" as defined by the policies; and (3) "pollutants" were specifically excluded. We will not recite specific policy language in setting forth the facts, but instead will address the specific language of the policies during our analysis.

¶ 7        The underlying lawsuit went on for over six years. Count I for criminal public nuisance was dismissed on January 8, 2009, while count II for common law public nuisance was dismissed on January 14, 2009. The claims for private nuisance went to trial. After a jury trial, a verdict was returned in favor of Bible Pork. On appeal, this court found the trial court properly granted summary judgment in favor of Bible Pork on the issue of public nuisance and properly denied the plaintiffs' motion for a new trial after the jury verdict in favor of Bible Pork on the issue of private nuisance. *Pierson v. Bible Pork, Inc.*, 2011 IL App (5th) 090308-U.

¶ 8        With regard to the instant litigation, despite Country Mutual's denial of coverage, Bible Pork continued to advise Country Mutual regarding developments in the underlying lawsuit. For example, after the facility became operational, Bible Pork provided Country Mutual with the trial court's ruling that an actual controversy existed regarding whether the livestock facility was a public and/or private nuisance. Bible Pork also informed Country Mutual of statements made by Fred Roth, plaintiffs' attorney, that plaintiffs sought both monetary damages and injunctive relief. Bible Pork requested Country Mutual reconsider its earlier denials, but on August 5, 2008, Country Mutual again denied coverage.

¶ 9        On September 30, 2008, Country Mutual filed the instant action, a complaint for declaratory judgment, seeking a declaration it had no duty to defend or indemnify its insured, Bible Pork, under either the Agriplus policy or the umbrella policy. Discovery ensued. Ultimately, both parties filed cross-motions for summary judgment on the question of whether Country Mutual had a duty to defend the underlying lawsuit. On April 26, 2013, the trial court entered an order granting Bible Pork's motion for summary judgment, finding Country Mutual owed Bible Pork a duty to defend in the underlying lawsuit. The trial court made four specific findings with regard to why there was a duty to defend.

¶ 10       The trial court found: (1) the underlying lawsuit was a suit for damages under the Agriplus policy and a suit seeking damages under the umbrella policy because the complaint specifically asked for "other relief deemed appropriate"; (2) there was an "occurrence" as defined by the policies and the "expected or intended injury" exclusion in the Agriplus policy did not apply; (3) the allegations of "water contamination and depletion," "damage to Plaintiff's property," and similar allegations were sufficient to constitute "physical injury to or destruction of physical property" under both policies; and (4) the pollution exclusions were ambiguous and, therefore, inapplicable. The trial court ordered Country Mutual to reimburse

Bible Pork for all legal fees incurred as a result of the underlying lawsuit, plus interest. The trial court entered judgment in the amount of $2,026,098.63, plus accrued interest in the amount of $480,068.96. Country Mutual filed a timely notice of appeal.

¶ 11                                    ANALYSIS

¶ 12      There is no question of indemnity in the instant case because the jury found in favor of Bible Pork in the underlying lawsuit, and this court affirmed. The only issue raised in this appeal is whether the trial court erred in finding Country Mutual had a duty to defend Bible Pork in the underlying lawsuit. On appeal, Country Mutual takes issue with all the findings of the trial court and asks us to reverse the trial court's entry of summary judgment finding a duty to defend.

¶ 13      We first point out that a trial court's decision to grant summary judgment will be affirmed if the reviewing court concludes there is no issue of genuine fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). Summary judgment appeals are reviewed *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). Construction of an insurance policy and the determination of rights and obligations under the policy are questions of law for the court and appropriate for disposition via summary judgment. *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, ¶ 11, 996 N.E.2d 247. We now turn to the specific findings made by the trial court.

¶ 14                                   I. Damages

¶ 15      Country Mutual first contends the trial court erred in finding the underlying lawsuit constituted a claim for covered damages, or seeking covered damages, because the language in the complaint "other relief deemed appropriate" is not a factual claim determined in construing potential coverage. Country Mutual insists the allegations of fact in the complaint when construed and compared to the policy language simply do not assert a claim, and, if the trial court's ruling is upheld, we would be dramatically expanding the duty to defend to virtually every type of lawsuit. We disagree.

¶ 16      "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247 (1982). The duty to defend is much broader than the duty to indemnify because the duty to defend is triggered if the complaint *potentially* falls within a policy's coverage, whereas the duty to indemnify is triggered only when the resulting loss or damage *actually* comes within a policy's coverage. *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 741, 888 N.E.2d 633, 644 (2008). To determine if a claim is potentially covered under an insurance policy, a court must compare the allegations in the underlying complaint to the policy language. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55, 828 N.E.2d 1092, 1098 (2005). It is well settled that both the underlying complaint and the insurance policy should be liberally construed in favor of the insured and against the drafter of the policy, the insurer. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930

(1991). The duty to defend extends to cases in which the complaint contains several theories or causes of action against the insured and only one of the theories is within the policy's coverage limits. *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1011, 728 N.E.2d 680, 692 (2000).

¶ 17    According to the Agriplus policy, Country Mutual is liable as follows:

"If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, 'we' will:

1. Pay up to 'our' limit of liability for the damages for which an 'insured' is legally liable. Damages include prejudgment interest awarded against an 'insured'; and

2. Provide a defense at 'our' expense by counsel of 'our' choice, even if the suit is groundless, false or fraudulent. 'We' may investigate or settle any claim or suit that 'we' decide is appropriate. 'Our' duty to settle or defend ends when 'our' limit of liability for the 'occurrence' has been exhausted by payment of a judgment or settlement."

According to the umbrella policy, Country Mutual is further liable as follows:

"The company will indemnify the insured for ultimate net loss in excess of the applicable underlying or retained limit hereafter stated which the insured may sustain by reason of liability imposed upon the insured by law for damages because of:

1. Personal Injury

2. Property Damage

Caused by or arising out of an occurrence happening anywhere in the world, during the policy period."

¶ 18    The umbrella policy also provides Country Mutual will "defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Accordingly, the Agriplus policy agrees to defend against a lawsuit "for damages" while the umbrella policy agrees to defend against any lawsuit "seeking damages."

¶ 19    A review of the complaint shows that in addition to having Bible Pork's proposed livestock facility declared a nuisance, plaintiffs in the underlying lawsuit also sought "other relief deemed appropriate." We agree with the trial court's analysis that plaintiffs' prayer for "other relief" in the underlying lawsuit establishes it as a suit for "damages" and one "seeking damages" which are to be covered under the language of the policies issued by Country Mutual. The trial court specifically relied on *B.H. Smith, Inc. v. Zurich Insurance Co.*, 285 Ill. App. 3d 536, 676 N.E.2d 221 (1996), which held that the insurance company had a duty to defend despite the fact that the plaintiff in the underlying lawsuit was seeking injunctive relief. In that case, in addition to injunctive relief, the plaintiff also sought " 'such other and further relief as [the] Court may deem just and proper.' " *B.H. Smith*, 285 Ill. App. 3d at 541, 676 N.E.2d at 224. Our colleagues in the First District interpreted that phrase to mean the plaintiff was, in fact, asking for money damages in addition to injunctive relief. *B.H. Smith*, 285 Ill. App. 3d at 541, 676 N.E.2d at 224. Country Mutual insists the trial court's reliance on *B.H. Smith* was incorrect because that case interpreted New York law. We are unconvinced and find *B.H. Smith* to be on point.

¶ 20    *B.H. Smith* declared that the prayer for equitable relief did not preclude the insurer from having to defend because even if equitable relief was granted in the underlying lawsuit, the trial court still could have awarded money damages. New York law provides " 'equity may award damages in lieu of the desired equitable remedy.' " *B.H. Smith*, 285 Ill. App. 3d at 541, 676 N.E.2d at 224 (quoting *Doyle v. Allstate Insurance Co.*, 136 N.E.2d 484, 486 (N.Y. 1956)). Illinois law is consistent with New York law in that our supreme court has determined the term "damages" as used in a comprehensive general liability policy, such as the one in the instant case, covers money one must expend to remedy an injury for which he or she is responsible, whether such expenditure is compelled by a court of law by way of compensatory damages or by a court of equity by way of compliance with a mandatory injunction. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 116, 607 N.E.2d 1204, 1216 (1992).

¶ 21    In *Outboard Marine*, both the Environmental Protection Agency (EPA) and the Illinois EPA (IEPA) had already brought separate actions against Outboard Marine before the insurance dispute arose. *Outboard Marine*, 154 Ill. 2d at 98, 607 N.E.2d at 1208. The underlying action sought equitable relief rather than legal. *Outboard Marine*, 154 Ill. 2d at 100, 607 N.E.2d at 1208. The issue in that case was whether the insurer's duty to defend under the policies was triggered by suit for equitable relief when the policy language required the existence of a suit seeking damages. In analyzing the meaning of its ruling, our supreme court later stated, "What we learn from *Outboard Marine* is that, in the absence of policy language to the contrary, the language 'suit seeking damages' will be construed to include suits seeking either or both compensatory damages and equitable relief." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 160, 821 N.E.2d 206, 217 (2004).

¶ 22    Here, the parties contracted for a duty to defend in both policies against lawsuits seeking damages. The underlying lawsuit was a suit for damages in that it sought equitable relief in the form of the declaration of a nuisance and also "other relief deemed appropriate." Neither the Agriplus policy nor the umbrella policy added exclusionary language. Accordingly, relying on *Outboard Marine*, we agree with the trial court's analysis and find the duty to defend was triggered by the filing of the underlying lawsuit.

¶ 23    Furthermore, plaintiffs' counsel in the underlying lawsuit, Fred Roth, explained he styled the claims as declaratory judgment claims because plaintiffs would decide what remedies they preferred after a jury found in plaintiffs' favor. During an April 5, 2006, hearing, Roth specifically stated:

"I will not disagree that our approach is in some ways piecemeal. ***

*** [I]f the jury says it is a nuisance that they are intending to create at this location, [Bible Pork] will be on notice. If they go forward and operate that facility, which they may or may not do at that point, if they don't proceed and operate, fine. If they do proceed to operate, then the Plaintiffs would say, well, we have established that much, that it's a nuisance. Now we have to decide are we going to try to stop them from proceeding or are we simply going to ask for damages resulting from their proceeding, and it would be an election of remedies question at that point in time depending upon what the facts and circumstances are."

During an August 28, 2006, hearing on a motion to dismiss, Roth further stated:

"It is not expected, depending on the parties' reaction to the jury verdict, that this will necessarily be the end point of the controversy nor is it required to be the end point

of the controversy necessarily depending upon what the parties do once this decision is made, but if the decision is made by the jury that this is not a nuisance, I don't have 21 scenarios then. I don't have 21 requests for damages and injunctive relief because the pendulum sweeps in the other direction in favor of the Defendant."

Later in the hearing, Roth noted some of the plaintiffs might seek an injunction while others might opt in favor of damages.

¶ 24 We are aware the general rule is that "it is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured." *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562, 571 N.E.2d 256, 260 (1991); see also *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 567, 734 N.E.2d 50, 62 (2000). However, there are exceptions to the general rule. For example, an insured may offer extrinsic evidence of facts in addition to those alleged in the complaint in order to prove a suit triggers an insurer's duty to defend. *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 536 (1979). Therefore, even assuming *arguendo* the complaint did not fully apprise Country Mutual that the underlying lawsuit claims fell within policy coverage, Country Mutual was obliged to defend because it had "knowledge of true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." *Associated Indemnity*, 68 Ill. App. 3d at 816, 386 N.E.2d at 536.

¶ 25 II. Elements Necessary to Trigger a Duty

¶ 26 Country Mutual next contends the additional elements necessary to trigger a duty to defend are lacking. Country Mutual specifically takes issue with the trial court's findings that there was an "occurrence" and that the "expected or intended injury" exclusion in the Agriplus policy does not apply. We disagree.

¶ 27 The Agriplus policy defines "occurrence" as:

"Under SECTION 1, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in;

'bodily injury'; or

'property damage.' "

The umbrella policy states:

"Occurrence means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured. All such exposure to substantially the same general conditions existing at or emanating from one location or source shall be deemed one occurrence."

The Agriplus policy also limits liability in the following manner:

"E. Liability, Coverage A and Medical Payments, Coverage B do not apply to the following:

1. Expected Or Intended Injury

- 7 -

'Bodily injury' or 'property damage' which may reasonably be expected or intended to result from the intentional acts of an 'insured' even if the resulting 'bodily injury' or 'property damage':

    a. Is of a different kind, quality or degree than initially expected or intended; or

    b. Is sustained by a different person, entity, real property or personal property, than initially expected or intended.

This exclusion applies regardless of whether any 'insured' personally participated or committed the alleged act and regardless of whether any 'insured' subjectively intended the 'bodily injury' or 'property damage' for which a claim is made."

The definition of "occurrence" in the umbrella policy also requires that the resulting personal injury or property damage be "neither expected nor intended" from the standpoint of the insured.

¶ 28     By their terms, the policies apply to property damage or bodily injury only if such damage is caused by an "occurrence." The policies define occurrence as an "accident." While neither policy defines "accident," in interpreting insurance policies the term "accident" is generally defined as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Westfield National Insurance Co. v. Continental Community Bank & Trust Co.*, 346 Ill. App. 3d 113, 117, 804 N.E.2d 601, 605 (2003). Country Mutual contends the complaints allege potential harm in the future, so that even if there is property damage or bodily injury, it would never be an occurrence because it could not qualify as an unforeseen occurrence or untoward or unexpected event. Country Mutual also asserts it is irrelevant whether Bible Pork claims it had no subjective intent to cause harm or injury, and the exclusion in the Agriplus policy applies even if there is an occurrence because the coverage is precluded for any property damage which is expected or intended. We disagree.

¶ 29     "The focus of the inquiry in determining whether an occurrence is an accident is whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." (Emphases in original.) *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 409, 811 N.E.2d 718, 723 (2004). It is also important to note that "the extension of coverage from 'accident' to 'occurrence,' as in this policy, has generally been considered to broaden coverage." *Lyons*, 349 Ill. App. 3d at 410, 811 N.E.2d at 724. Finally, we agree with the trial court that this case is analogous to *Erie Insurance Exchange v. Imperial Marble Corp.*, 2011 IL App (3d) 100380, 957 N.E.2d 1214.

¶ 30     In *Erie*, the insurer sought a declaration it had no duty to defend the insured, a manufacturer, against underlying litigation, alleging negligence, trespass, and nuisance against the insured for personal injury and property damage resulting from invasions of the underlying plaintiffs' persons and property " 'by noxious odors, volatile organic materials (VOMs) and hazardous air pollutants (HAPs), including, but not limited to STYRENE and Methyl Methacrylate (MMA), air contaminants and other hazardous material' " in emissions generated by the insured's business operations. *Erie*, 2011 IL App (3d) 100380, ¶ 9, 957 N.E.2d 1214. The underlying complaint also alleged the insured emitted VOMs and HAPs in violation of IEPA regulations and released more than the amounts of VOMs and HAPs allowed under the permit and knew, or should have known, and was aware of, expected, and intended the omissions to occur. On appeal, the insurer argued that because the emissions were intentionally discharged, they did not constitute an accident and were not an occurrence under

the policy. The insured responded it had no intent to pollute, as evidenced by its operation under an emissions permit. The *Erie* court noted that the threshold for pleading a duty to defend is low, that any doubt should be resolved in favor of the insured, and that the underlying complaint did not allege under *every* count that the insured intentionally discharged pollutants and, thus, concluded the underlying complaint alleged an occurrence. *Erie*, 2011 IL App (3d) 100380, ¶¶ 16-18, 957 N.E.2d 1214.

¶ 31        *Erie* specifically relied on *Lyons* in also finding the policy's expected or intended injury exclusion did not preclude coverage, explaining as follows:

> "As noted above, the focus is on whether the injury was expected or intended, not whether the act that caused the injury was expected or intended. *** Because Imperial operated pursuant to an emissions permit, it cannot be considered to have expected or intended to injure the underlying plaintiffs' persons or properties. We find that the expected or intended injury exclusion does not apply to preclude coverage." *Erie*, 2011 IL App (3d) 100380, ¶ 19, 957 N.E.2d 1214.

Relying on *Erie*, we find the underlying complaint alleges potentially covered bodily injury or property damage caused by an "occurrence" which triggered Country Mutual's duty to defend under the insurance policies, and the expected or intended injury exclusion did not apply.

¶ 32        The allegations in the underlying lawsuit against Bible Pork are similar to the allegations made in the underlying lawsuit in *Erie*. The underlying complaint here alleged "excessive, annoying and disagreeable noises," "strong, offensive, foul-smelling and disagreeable odors as a result of discharges of chemicals, wastes, manure dust or airborne particles," "contamination of surface waters," "water contamination and depletion," and "significant reduction in Plaintiffs' property values." All the alleged injuries and damages came from Bible Pork's hog facility, which was granted regulatory approval by the Department and forced to comply with the requirements of the Act, as well as with numerous other state rules and regulations, prior to becoming operational.

¶ 33        We have reviewed the cases cited by Country Mutual in support of its argument that there was no occurrence and the expected or intended injury exclusion in the Agriplus policy applies. After careful consideration, we find them all distinguishable from the facts here. As discussed above, the facts in the instant case are remarkably similar to the facts in *Erie*. The underlying complaint, when construed in the light most favorable to Bible Pork, stated bodily injury or property damage due to an occurrence and alleged theories of recovery which fell within the terms of the policies so that Country Mutual should have provided a defense.

¶ 34                              III. Pollution Exclusion

¶ 35        Country Mutual contends that even if its duty to defend was triggered by the bodily injury and/or property damage provisions, its failure to defend is excused because the policies' pollution exclusions apply. We disagree.

¶ 36        The Agriplus policy contains a pollution exclusion in pertinent part as follows:

> "Pollution
>
> 'Bodily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of 'pollutants':
>
>> a. At or from premises an 'insured' owns, rents, or occupies;

b. At or from any site or location used by or for an 'insured' or others in the handling, storage, disposal, processing, or treatment of waste;

c. Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for an 'insured' or any person or organization for whom an 'insured' may be legally responsible ***."

The umbrella policy also contains the following pollution exclusion:

"II. EXCLUSIONS

This policy does not apply:

* * *

M. to personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release, or escape of pollutants:

1. at or from premises the named insured owns, rents, or occupies;

2. at or from any site or location used by the named insured or for the named insured or others for the handling, storage, disposal, processing, or treatment of waste material;

3. which are at any time transported, handled, stored, treated, disposed of, or processed as waste by the named insured or for the named insured or any person or organization for whom the named insured may be legally responsible[.]

* * *

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials. Waste materials includes materials which are intended to be or have been recycled, reconditioned, or reclaimed."

¶ 37 The trial court found the pollution exclusions inapplicable because the policies are ambiguous with respect to the allegations of "noises," "odors," and "smells" alleged in the underlying lawsuit. We agree.

¶ 38 We note that a pollution exclusion much the same as the one in the instant case was found to be ambiguous in *Erie*. 2011 IL App (3d) 100380, ¶¶ 21-23, 957 N.E.2d 1214. In order to determine whether a policy exclusion applies, we interpret the exclusion under the normal rules of contract interpretation. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432-33, 930 N.E.2d 999, 1003-04 (2010). Any ambiguity is to be construed liberally in favor of the insured, and the court will find an ambiguity "where the policy language is susceptible to more than one reasonable interpretation" and not merely where the parties disagree as to its meaning. *Founders Insurance*, 237 Ill. 2d at 433, 930 N.E.2d at 1004. The burden is on the insurer to prove a limitation or exclusion applies. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453-54, 905 N.E.2d 747, 752 (2009). Where an exclusionary clause is relied upon to deny coverage, its applicability must be free and clear from doubt. *Economy Preferred Insurance Co. v. Grandadam*, 275 Ill. App. 3d 866, 870, 656 N.E.2d 787, 789 (1995).

¶ 39 In *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 687 N.E.2d 72 (1997), our supreme court addressed insurance policy pollution exclusions. In that case, the insurer sought a declaration it had no duty to indemnify the insureds against tenants' claims for injuries arising from carbon monoxide fumes emitted from a building's faulty furnace. The court agreed "with those courts which have restricted the exclusion's otherwise potentially limitless application to only those hazards traditionally associated with environmental pollution."

*Koloms*, 177 Ill. 2d at 489, 687 N.E.2d at 79. Our supreme court found it improper to extend the pollution exclusions beyond the arena of traditional environmental contamination and held the exclusion did not apply to accidental release of carbon monoxide due to a faulty furnace. *Koloms*, 177 Ill. 2d at 492-94, 687 N.E.2d at 81-82.

¶ 40        While Country Mutual contends the underlying lawsuit alleged "traditional environmental pollution," we find the underlying lawsuit did not. In support of our finding we rely not only on *Erie*, but also on *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124, 998 N.E.2d 950. The facts in *Hilltop* are nearly identical to the instant case. In *Hilltop*, the insurer filed a complaint against an insured hog farm and the farm's neighbors, arguing it had no duty to defend under its policies against the neighbors' underlying nuisance and negligence lawsuit predicated on alleged odors caused by the operation of the confinement hog farm and the land application of manure from the confinement hog farm on property owned by the neighbors. The insurer asserted the policies' pollution exclusion barred coverage and defense of the underlying lawsuit. The insureds in *Hilltop* were covered by an Agriplus policy and an umbrella policy similar to the policies in the instant case. The pollution exclusion in an umbrella policy stated the policy did not apply:

> " 'to personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release, or escape of pollutants:
>
> * * *
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fume, acids, alkalis, chemicals, and waste materials. Waste materials include materials which are intended to be or have been recycled, reconditioned, or reclaimed.' " *Hilltop*, 2013 IL App (4th) 130124, ¶ 28, 998 N.E.2d 950.

Based upon the allegations made in the complaint, the *Hilltop* court found the neighbors did not appear to be claiming the insureds were polluting the environment in the traditional sense of the word. *Hilltop*, 2013 IL App (4th) 130124, ¶ 38, 998 N.E.2d 950.

¶ 41        The alleged source of injury in the instant case is virtually identical to *Hilltop*. Both cases claim pollution caused by a hog facility. The insureds in *Hilltop* operated a large hog-farming operation, which was characterized as "larger than traditional hog farms." *Hilltop*, 2013 IL App (4th) 130124, ¶ 38, 998 N.E.2d 950. The alleged pollutants are the same in both cases, along with the same alleged injuries, including the underlying plaintiffs' ability to use and enjoy their property and alleged damage to their quality of life. We agree with *Hilltop* that the claims made by the plaintiffs in the underlying lawsuit are not pollution claims in the traditional sense of the word. We also agree with *Erie* that the exclusion is ambiguous because "[w]hen the allegations in the underlying complaint are compared to the relevant provisions in the insurance polic[ies], it is unclear whether permitted emissions constitute traditional environmental pollution that is excluded." *Erie*, 2011 IL App (3d) 100380, ¶ 22, 957 N.E.2d 1214. Accordingly, the policies' pollution exclusions do not apply.

¶ 42                                              CONCLUSION

¶ 43        We find the allegations in the underlying complaint in the underlying lawsuit constituted a claim for damages and set forth the elements necessary to trigger a duty to defend. We further

- 11 -

find that the pollution exclusions do not apply to abrogate Country Mutual's duty to defend. Accordingly, the judgment of the circuit court of Clay County is affirmed.

¶ 44    Affirmed.

¶ 45    JUSTICE MOORE, dissenting.

¶ 46    I respectfully dissent. As the majority correctly establishes, in order to determine if a claim is potentially covered under an insurance policy, thus triggering a duty to defend, the court must compare the allegations in the complaint to the policy language. See *supra* ¶ 16. Here both of the insurance policies at issue provide for coverage of claims made against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence." Both policies define "occurrence" as "an accident" which results in bodily injury or property damages. The underlying complaint alleges that the insured had filed a "Notice of Intent to Construct" a facility that would house approximately 16,606 hogs. The complaint alleges that "there is a danger of real and immediate injury which will occur" if the facility were to become operational, in that "there will be strong, offensive, repugnant, foul-smelling and disagreeable odors as a result of discharges and emissions of chemical gases, wastes, manure dust, and airborne particles." The complaint alleges that the insured's hog farm "when completed will be a public nuisance to [the] [p]laintiffs," and "when completed will be a private nuisance to [the] [p]laintiffs." There are no allegations anywhere in the underlying complaint that the underlying plaintiffs have yet suffered any property damage or bodily injury, and I would accordingly find no potential coverage under the policy.

¶ 47    The majority cites no case law to support a finding that a request for a prospective declaration of nuisance for a not-yet-operational business facility could be considered an occurrence which has resulted in property damage or bodily injury despite the fact that neither type of injury has been alleged in the complaint. In all of the cases cited by the majority, the underlying complaint alleged some type of covered injury caused by an occurrence. In *B.H. Smith, Inc. v. Zurich Insurance Co.*, 285 Ill. App. 3d 536, 540, 676 N.E.2d 221, 223 (1996), the underlying complaint alleged that the underlying plaintiff suffered a trademark infringement injury due to advertising conducted by the insured, which was clearly a covered claim under the policy. The issue in that case was whether the claim could be considered one for damages when the underlying complaint contained a prayer for equitable relief (*id.* at 541, 676 N.E.2d at 224), an issue that does not speak to the more fundamental problem facing this court in comparing the complaint and the policies at issue in this case, where no covered injury is alleged.

¶ 48    Similarly, in *Erie Insurance Exchange v. Imperial Marble Corp.*, 2011 IL App (3d) 100380, 957 N.E.2d 1214, and *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992), the underlying complaints alleged that harm had been caused by pollution caused by the insured's operations, clearly falling within the definition of "occurrence." These cases dealt with whether such pollution could be considered an "accident" and whether specific exclusions for intentional conduct and pollution would apply. These cases simply do not address the fundamental problem that becomes apparent from comparing the underlying complaint with the insurance policy, which is that no bodily injury or property damage is alleged. For these reasons, I would reverse the judgment of the circuit court and

remand with directions that the circuit court enter a summary judgment in favor of Country Mutual.