2021 IL App (1st) 200970-U

FIRST DISTRICT,
FIRST DIVISION
December 13, 2021

No. 1-20-0970

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| v. | ) ) | |
| LAW OFFICES OF ALAN E. SOHN, CHARTERED, an Illinois professional service corporation, ALAN E. SOHN, RANDY SLY, and PAUL S. FRANCISZKOWICZ not individually but as Guardian *ad Litem* for the minor heirs of the ESTATE OF LISA R. LOESSY, Deceased, | ) ) ) ) ) ) ) ) | No. 19 CH 10433  Honorable Pamela McLean Myerson, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Legal malpractice insurer had duty to defend insured where underlying lawsuits alleged "damages" as defined by the policy language.

¶ 2    This is an insurance dispute as to whether the Illinois State Bar Association Mutual

Insurance Company (ISBA Mutual) has a duty to defend Alan Sohn and the Law Offices of Alan

E. Sohn, Chartered (collectively Sohn) in two separate underlying lawsuits. The underlying lawsuits were brought against Sohn by Randy Sly and Paul Franciszkowicz (the GAL) alleging legal malpractice in Sohn's handling of *Estate of Lisa Loessy*, 12-P-4656 (Cir. Ct. Cook County). Sohn tendered his defense of both actions to ISBA Mutual, which accepted the tender pursuant to a reservation of rights and then brought the instant declaratory judgment action, arguing that it had no duty to defend Sohn because both underlying actions sought attorney fees and not "damages" as defined by the policy. The trial court granted Sohn, Sly, and the GAL's motions for judgment on the pleadings. ISBA Mutual now appeals. For the reasons that follow, we affirm.

¶ 3                                BACKGROUND

¶ 4                              The Estate Action

¶ 5        Lisa Loessy died on June 28, 2012, leaving a will that named her two minor children as legatees. Her will was admitted to probate in August 2012. *Estate of Lisa Loessy*, 12-P-4656 (Cir. Ct. Cook County) (the Estate Action). Randy Sly was appointed the executor of Lisa's estate and retained Sohn to represent him in the probate proceedings. In September 2012, the court entered an order converting the estate to supervised administration, under which an executor is not allowed to exercise the administrative powers referenced in Article 28 of the Probate Act, including paying attorney fees, without court approval. *In re Estate of Blickenstaff*, 2012 IL App (4th) 120480, ¶ 57; see 755 ILCS 5/28-4(c) (West 2010).

¶ 6        On February 10, 2016, Lisa's former husband John Loessy moved for appointment of a guardian *ad litem* for the minors. John alleged that the estate had paid $273,398.69 in fees and costs to Sohn without court approval. He further alleged that these fees represented over 30% of

the estate's assets and were "grossly excessive." The probate court appointed Paul Franciszkowicz as GAL, and directed Sohn to file a fee petition, which Sohn did.

¶ 7 On January 17, 2018, following a four-day hearing on Sohn's petition, the probate court found that "Sohn's billings were paid without court approval, without authority for such payments and in contravention of the statute." *Estate of Lisa Loessy*, 12-P-4656 (Cir. Ct. Cook County). The court additionally found that most of Sohn's billings were "unnecessary and unreasonable" and "resulted in little benefit" to an estate the evidence established was "not a complicated estate to administer." *Id.* The court found "reasonable and necessary" fees in the amount of $135,000. Since Sohn had already received $320,000 in fees from the estate, he was ordered to repay the sum of $185,000, "said sum having been paid to him by the supervised administrator of this estate without court approval."

¶ 8 Two days after the probate court entered judgment against Sohn, Sly resigned as executor and waived his right to request any executor fees in excess of the $5000 that he had already received.

¶ 9 On February 9, 2018, the GAL filed a Petition for Judgment, seeking to assess the $185,000 judgment against Sly in addition to Sohn, arguing that Sly should be held personally liable for wrongfully disbursing estate funds to pay Sohn. The trial court granted the GAL's motion on October 1, 2018. Additionally, on February 27, 2019, the trial court assessed GAL fees in the amount of $95,056.31 against Sly in his personal capacity. We affirmed the trial court's judgment against Sohn in *In re Estate of Loessy*, 2020 IL App (1st) 180419-U.

¶ 10                                            The Sly Action

¶ 11 On July 2, 2019, Sly filed an action against Sohn in No. 19 L 07310 (the Sly Action) alleging breach of contract, breach of fiduciary duty, and misrepresentation. Sly alleged that he

paid Sohn's fees with estate funds based on Sohn's assurances that court approval was not required. Moreover, Sly did not testify at the hearing on Sohn's fee petition because Sohn advised him that only Sohn's fees were at issue. Sly claimed that a conflict of interest existed because (1) he could have raised Sohn's malpractice in advising him to use estate funds to pay attorney fees in his own defense; (2) Sohn never informed Sly that he could be found liable if Sohn failed to repay the estate; and (3) Sohn continued billing the estate even though he knew he might not be able to repay those fees. Sly argued that Sohn's continued representation of him violated the Rules of Professional Conduct. See Ill. R. Prof'l Conduct (2010) R. 1.7 (eff. Jan. 1, 2010); Ill. R. Prof'l Conduct (2010) R. 1.8 (eff. Jan. 1, 2010).

¶ 12    Sly further alleged that he resigned as executor and waived executor fees based on Sohn's advice. On January 17, 2018, after the probate court entered the $185,000 judgment against Sohn, Sly sent Sohn an email indicating that he wished to resign as executor and waive further executor fees, contingent upon the probate court's waiver of all claims against him. However, at the next status hearing, Sohn "falsely represented to the Court that Sly agreed to waive executor's fees and resign, even though the claims relating to the overpayment of fees would still proceed, in violation of the aforementioned conditional authority." The court accepted Sly's resignation and waiver of fees without releasing the estate's claims against him.

¶ 13    Sly sought damages for breach of contract, breach of fiduciary duty, and misrepresentation as follows: (1) $185,000, representing the judgment against Sly for attorney fees that Sohn failed to repay to the estate; (2) $95,056.31, representing the judgment against Sly for the GAL's fees; (3) $115,077.33 in waived executor fees; (4) attorney fees incurred by Sly in the Estate Action; and (5) attorney fees incurred by Sly in the Sly Action.

¶ 14                                    The GAL Action

¶ 15          On July 16, 2019, the GAL, on behalf of the minors[1], brought an action against Sohn for legal malpractice and breach of fiduciary duty in No. 19 L 7766 (the GAL Action). The GAL alleged that Sohn failed to properly advise Sly of his duties as executor under the Probate Act in multiple ways: First, Sohn instructed Sly to disburse attorney fees to him without court approval. Second, he failed to advise Sly not to sell estate assets without court approval, which led to Sly selling estate-owned stock at a loss. Third, Sohn failed to advise Sly not to take a personal loan from estate assets. Sohn's malfeasance "substantially reduced" the estate.

¶ 16          The GAL further alleged that Sohn caused "unreasonable and unnecessary" delay in both the estate administration and in post-decree divorce proceedings between the decedent and her former husband. This delay was caused, in part, by Sohn's deficient legal knowledge and skill in domestic relations law, resulting in untimely distributions of estate assets to the minors.

¶ 17          Based on the $185,000 and $95,056.31 judgments against Sly (which remained unpaid), the GAL sought damages "substantially" in excess of $50,000.

¶ 18                                    The Present Action

¶ 19          At all relevant times, Sohn had a legal malpractice insurance policy with ISBA Mutual. The policy provided that ISBA Mutual would pay on Sohn's behalf all claim expenses and damages in excess of the deductible and up to the limit of liability, as long as those expenses and damages arose out of a claim for a "wrongful act." A "wrongful act" was defined, in relevant part, as "any actual or alleged negligent act, error, or omission in the rendering of or failure to render PROFESSIONAL SERVICES." (Emphasis omitted.) The term "damages" included

_____

[1] At the time of the GAL's appointment, both children were minors. Prior to the filing of the GAL Action, one of the children attained majority and separately retained the GAL to continue

"judgments, settlements, final arbitration awards, and any taxes, fines or penalties incurred by a third party" but excluded attorney fees:

"The INSURED agrees with the COMPANY that DAMAGES do not include:

* * *

4. legal fees, costs or expenses paid or incurred by the claimant, or retained or possessed by the INSURED, whether claimed by way of restitution of specific funds, forfeiture, financial loss or otherwise, and injuries which are, in whole or part, a consequence of those fees ***." (Emphasis omitted.)

¶ 20    Sohn tendered his defense of the Sly Action and the GAL Action to ISBA Mutual, which accepted the tender pursuant to a reservation of rights. On September 10, 2019, ISBA Mutual filed the instant declaratory judgment suit against Sohn, Sly, and the GAL (collectively defendants), seeking a declaration that it had no duty to defend the Sly Action or the GAL Action because both were disputes over attorney fees, which were excluded from coverage.

¶ 21    Sohn, Sly, and the GAL filed separate motions for judgment on the pleadings, and ISBA Mutual filed a cross-motion for judgment on the pleadings. On August 28, 2020, the trial court granted defendants' motions and entered judgment for defendants, finding that both the Sly Action and the GAL Action alleged injuries as a result of negligent conduct—namely, unnecessary work—that was covered by the ISBA policy.

¶ 22                                    ANALYSIS

¶ 23    "An insurer has a duty to defend if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Illinois State Bar Ass'n Mutual Insurance Co. v. McNabola Law Group, P.C.*, 2019 IL App (1st) 182386, ¶ 13. If multiple theories of recovery are alleged against the insured, only one theory need be potentially covered to trigger

the insurer's duty to defend. *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 2015 IL App (5th) 140211, ¶ 16. To determine whether a claim is potentially covered, we compare the allegations in the underlying complaint to the language of the policy, construing both the underlying complaint and the insurance policy liberally in favor of the insured and against the insurer. *Id.* Our review is *de novo*. *Pekin Insurance Co. v. Wilson*, 391 Ill. App. 3d 505, 509-10 (2009) (review of trial court's construction of an insurance policy is *de novo*); *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005) (judgment on the pleadings reviewed *de novo*).

¶ 24    ISBA Mutual argues that both the Sly Action and the GAL action seek attorney fees and not "damages" as defined by its policy, which contains an exclusion for "legal fees *** claimed by way of restitution of specific funds, forfeiture, financial loss or otherwise, and injuries which are, in whole or part, a consequence of those fees." Defendants argue that the Sly Action and the GAL Action are not disputes about fees but disputes about Sohn's alleged professional malpractice that fall within the coverage provided by the ISBA policy.

¶ 25                              The Sly Action

¶ 26    In the Sly Action, Sly alleges that due to Sohn's negligence, he became personally liable to the estate for $185,000, a sum representing "unnecessary and unreasonable" fees charged by Sohn that "were paid [from estate funds] without court approval." *Estate of Lisa Loessy*, 12-P-4656 (Cir. Ct. Cook County). Construing this allegation liberally in favor of the insured (*Bible Pork*, 2015 IL App (5th) 140211, ¶ 16), we find that Sly has alleged "damages" as defined by the ISBA policy.

¶ 27    In *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34 (2003), Kaplan represented Chubko in a bankruptcy action and charged him fees for services

rendered before the filing of the bankruptcy petition. *Id.* at 36-37. Chubko brought a malpractice suit against Kaplan, alleging that Kaplan was negligent for failing to obtain a discharge of his pre-petition fees in the bankruptcy proceeding. Kaplan's malpractice insurer sought a declaration that it had no duty to defend Kaplan, arguing that Chubko's alleged injury was "a consequence of legal fees charged by Kaplan and, as such, falls outside of the Policy's definition of damages." We disagreed and found a duty to defend, explaining:

> "The fact that the damages sought by Chubko *** may well be measured by the sums paid to Kaplan, post-discharge, for legal services rendered prior to the filing of Chubko's petition in bankruptcy does not mean that the injury suffered is a consequence of the fees charged. Rather, the injury suffered is a consequence of Kaplan's alleged negligent failure to secure a discharge of Chubko's obligation to pay those fees." *Id.* at 39-40.

¶ 28    In *Kaplan*, the claimant's injury had a dual nature as both a fee and a debt that should have been discharged in bankruptcy. Thus, the *Kaplan* court held that the injury did not fall under the exclusion for fees but should be regarded as damages. Likewise, the $185,000 sought by Sly has a dual nature as both a fee and a sum for which Sly became liable to a third party due to Sohn's alleged professional negligence. Sly's injury is not a consequence of the fees charged, but a consequence of Sohn's allegedly negligent advice.

¶ 29    By the same token, Sly's claimed damages of $95,056.31, representing the GAL fees the probate court ordered Sly to pay in the Estate Action, are "damages" as defined by the ISBA policy. Under *Kaplan*, the $95,056.31 has a dual nature as both a fee and a sum for which Sly became liable to a third party due to Sohn's professional negligence.

¶ 30        ISBA Mutual argues that this case is analogous to *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (2010), in which attorney Bertucci represented Rodriguez in a medical malpractice suit, obtained a $2.25 million settlement, and retained a $750,000 fee. Rodriguez "did not take issue with Bertucci's handling of her claim or with the settlement figure he secured" but sued him based on his retention of $750,000 in fees, alleging breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraud, and violation of the statute limiting contingent fees in medical malpractice actions. *Bertucci*, 399 Ill. App. 3d at 777-78.

¶ 31        We found that Bertucci's insurer had no duty to defend him for two reasons. First, Rodriguez's suit did not concern "an act or omission in the performance of legal services" because billing is "largely ministerial" and does not draw upon specialized legal knowledge and skill. (Emphasis and internal quotation marks omitted.) *Id.* at 780, 786. In this regard, we distinguished *Kaplan* because "[i]n that case, counsel was retained to do a job and was sued for failing to do it properly." *Id.* at 787-88. Second, Bertucci's policy contained an exclusion for legal fees, and Rodriguez's action "indisputably seeks *** restitution for legal fees which Bertucci improperly charged." *Id.* at 780-81.

¶ 32        *Bertucci* is distinguishable because Sly's complaint clearly sounds in professional negligence. As in *Kaplan*, Sohn "was retained to do a job and was sued for failing to do it properly." *Id.* at 787-88. He is also not seeking "restitution for legal fees" (*id.* at 780) Sohn took from him, because Sohn was paid with estate funds, action Sohn directed him to take without court authorization. Sly does not claim to be the rightful owner of the $185,000 in fees originally remitted to Sohn from the estate or the $95,056.31 in GAL fees for which he became liable. He seeks relief based on the judgment against him, which constitutes classic money damages, even

though the amount of his damages "may well be measured by the sums paid to [Sohn] *** for legal services rendered" (*Kaplan*, 345 Ill. App. 3d at 40).

¶ 33        ISBA Mutual's reliance on *Local 705 Int'l Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.*, 316 Ill. App. 3d 391 (2000), is misplaced. *Five Star Managers* concerned monies illegally taken from a pension fund in violation of fiduciary duties imposed by the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.* (West 1999) (ERISA). In this context, we held that "[a]n insured *** does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired." (Internal quotation marks omitted.) *Id.* at 395. Sly is not seeking disgorgement of improperly acquired funds. He is seeking compensation for damages incurred due to Sohn's professional negligence. Accordingly, ISBA Mutual has a duty to defend Sohn in the Sly Action.

¶ 34                                   The GAL Action

¶ 35        The GAL also seeks the sum of $185,000 as compensation for Sohn's alleged malfeasance. The GAL alleges that "the Estate has been substantially reduced through the wrongful disbursement of Attorneys' fees" and seeks repayment of those fees. ISBA Mutual argues that this sum represents a disgorgement of illegally transferred monies, as in *Five Star Managers*, and is therefore not covered damages.

¶ 36        As discussed above, *Five Star Managers* is factually inapposite. Like *Kaplan* (and unlike *Bertucci*), the GAL clearly alleges damages sustained as a result of Sohn's alleged professional negligence. Although the funds at issue were paid from the estate, the GAL's complaint stems from Sohn's allegedly negligent legal advice to Sly regarding his duties as executor, which resulted in damages to the estate.

¶ 37        In *Illinois State Bar Ass'n Mutual Insurance Co. v. Canulli*, 2020 IL App (1st) 190142, Canulli represented Freda in a divorce proceeding and filed a third-party complaint on her behalf. Freda sued Canulli for malpractice, alleging that he acted negligently in filing the third-party complaint and that she "incurred attorney's fees and costs for useless and unnecessary legal proceedings initiated by [Canulli]." *Id.* ¶ 6. She also alleged breach of contract in that Canulli "inflat[ed] bills" and "perform[ed] actions which were neither necessary nor reasonable to the prosecution and ultimate resolution of the *** divorce." She sought damages in excess of $100,000 "in attorney's fees and costs." *Id.* Finding this "more closely analogous to *Kaplan* than *Bertucci*," we held that ISBA Mutual had a duty to defend Canulli, reasoning: "Freda's complaint stems from the allegedly negligent way Canulli represented her in the divorce, and it is that negligent representation that caused her to expend more money than necessary. This is clearly a dispute about representation." *Id.* ¶ 30. Similarly, in the present case, Sohn's negligent representation is what allegedly caused the damages claimed by the GAL.

¶ 38        ISBA Mutual argues that *Canulli* was wrongly decided and should not be relied upon because the only injury alleged in *Canulli* consisted of fees excluded from coverage under the policy language. In this case, the GAL seeks damages incurred by the estate based on Sohn's allegedly negligent advice to Sly, including directing him to disburse funds without obtaining court approval. In other words, the injury alleged consists not only of fees charged but also Sohn's failure to properly represent the estate in the underlying probate proceedings.

¶ 39        The GAL additionally asserts $95,056.31 in damages, representing the as-yet-unpaid judgment entered against Sly for the GAL's fees. As in *Kaplan*, this sum has a dual nature: it is a monetary judgment won against a third party that happens to be measured by the amount of fees incurred by the GAL in the probate estate. This is not a claim for disgorgement of excessive fees,

nor does it concern "ministerial" malfeasance, unlike *Bertucci*. Rather, the GAL alleges that the estate's loss arose from Sohn's negligent legal advice to Sly about his authority as the supervised executor. Accordingly, under *Kaplan* and *Bertucci*, the GAL has alleged a covered loss.

¶ 40     The GAL also alleges that Sohn caused "unreasonable and unnecessary" delay in the related divorce proceedings due to his lack of skill and knowledge in domestic relations law. As a result, the minors did not receive timely distributions from the estate. Sohn also gave Sly negligent advice about taking a personal loan from estate assets and selling estate assets without court approval (which led to Sly selling estate-owned stock at a loss and "substantially reduced" estate assets). These damages are based on Sohn's negligent advice regarding estate administration, not the payment of legal fees. Based on these allegations, ISBA Mutual has a duty to defend in the GAL action.

¶ 41                           Rule 375(b) Sanctions

¶ 42     Defendants argue that ISBA Mutual should be sanctioned under Supreme Court Rule 375 (eff. Feb. 1, 1994), which permits sanctions if an appeal is frivolous, not taken in good faith, or is taken for an improper purpose. An appeal is considered frivolous if a reasonable, prudent attorney acting in good faith would not have brought it. *Robert H. v. Andrea Abbott H.*, 2019 IL App (5th) 180559, ¶ 23.

¶ 43     We do not find ISBA Mutual's appeal frivolous. ISBA Mutual was entitled to argue that *Canulli* was wrongly decided and that *Kaplan* was distinguishable from this case. While we do not agree with ISBA Mutual's arguments, they do not amount to bad faith. See *Kalmin v. Varan*, 2021 IL App (1st) 200755, ¶ 49 ("Although ultimately unsuccessful, we do not find [appellant's] arguments amount to bad faith for an improper purpose"). Accordingly, defendants' request for sanctions is denied.

¶ 44                                        CONCLUSION

¶ 45            For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 46            Affirmed.