# Illinois Official Reports

## Appellate Court

---

### *Kalmin v. Varan*, 2021 IL App (1st) 200755

---

| | |
|---|---|
| Appellate Court Caption | FRED KALMIN, Plaintiff-Appellee, v. JOSEPH VARAN, Defendant (… LLC, JV, Intervenor-Appellant). |
| District & No. | First District, First Division<br>No. 1-20-0755 |
| Filed | November 1, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-1764; the Hon. Patrick J. Heneghan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Giovanni Raimondi, of RAI Law, LLC, of Chicago, for appellant.<br><br>Gayle Weinberg Kalmin, of Law Offices of Gayle Weinberg, P.C., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Walker and Coghlan concurred in the judgment and opinion. |

**OPINION**

¶ 1 More than a decade ago, plaintiff Fred Kalmin obtained a default judgment against defendant Joseph Varan. In an attempt to collect, Kalmin filed a third-party citation to discover assets to Citibank, N.A. (Citibank), seeking funds in an account in the name of … LLC JV (JV), for which Varan was the sole signatory. JV successfully intervened in the citation proceeding and, following a delay of several years, filed a motion to quash the citation. The trial court denied the motion and ordered Citibank to turn the funds over to Kalmin. JV filed a motion to reconsider the order denying the motion to quash the citation and granting the turnover of the funds in the Citibank account. The trial court denied the motion but granted JV an evidentiary hearing to determine who owned the Citibank account. After the hearing, the trial court ruled in favor of Kalmin, finding (i) Varan, the only witness, was not credible; (ii) the money in the Citibank account belonged to him; and (iii) Varan had created JV to shield assets, income, and profits from creditors.

¶ 2 JV contends that the trial court erred in denying its motion to quash because the third-party citation (i) had expired, (ii) was too broad, and (iii) was not served on JV. JV also seeks reversal of the turnover order on two grounds. First, Kalmin failed to meet his burden to show that the Citibank account belonged to Varan. And second, the trial court made improper adverse inferences against JV for failing to produce documentary evidence to corroborate Varan's testimony or Varan's wife as a witness. Alternatively, JV contends that Kalmin was not entitled to all the funds in the Citibank account.

¶ 3 We affirm the order denying JV's motion to reconsider. The trial court did not err in denying the motion to quash the citation. Further, it did not abuse its discretion in finding that Varan was not a credible witness and that the funds in the Citibank account belonged to him.

¶ 4 Kalmin asks for sanctions against JV, Varan, and their attorneys under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for filing a frivolous appeal. We decline Kalmin's request for sanctions.

¶ 5 BACKGROUND

¶ 6 This case, before us a second time, arises from an agreement between Kalmin and Varan to buy and sell foreclosed property. In December 2009, Kalmin filed a complaint alleging that Varan breached the agreement by failing to pay his share of expenses and losses. When Varan's attorney failed to appear at a case management conference, the trial court struck Varan's answer and entered default, citing Varan's repeated failure to respond to discovery requests. After a prove-up hearing, the trial court entered judgment in favor of Kalmin for $298,664. Later, the trial court granted Kalmin's motion to revise its order to state that "Defendant's answer, affirmative defense and counterclaim was struck in its entirety for Defendant's repeated failure to comply with court orders and respond to discovery, *nunc pro tunc* to September 10, 2010." Varan filed a *pro se* motion to vacate the court's *nunc pro tunc* order. The trial court never heard the motion; Varan filed for bankruptcy shortly thereafter, which stayed the case.

¶ 7                                    Citation Proceedings

¶ 8        After lifting the bankruptcy stay, Kalmin initiated supplementary citation proceedings to discover Varan's assets and collect on the judgment. In August 2014, Kalmin issued a third-party citation to discover assets to Citibank. The Citibank citation included a rider asking Citibank to produce "all accounts for which Debtor Joe Varan is in title or has signatory power" and listed a number of companies, including JV. Citibank responded to the citation and disclosed the existence of one account, with a balance of $26,453.95, which was held under the name "…LLC JV," for which Varan was the sole signatory. Citibank froze the money in the account under section 2-1402 of the Code of Civil Procedure. 735 ILCS 5/2-1402 (West 2020).

¶ 9        JV filed a motion for leave to intervene and to quash the citation. The trial court granted JV leave to file both motions. JV filed an appearance but did not file a motion to quash the citation.

¶ 10       After a prolonged delay while the parties litigated other issues, Kalmin revived the judgment in March 2018, and filed a renewed motion for turnover of the Citibank funds. In response to the revived judgment, Varan renoticed his motion to vacate the *nunc pro tunc* order. The renoticed motion also sought to quash the citation to discover assets. The trial court entered an order finding it lacked jurisdiction to consider Varan's motion to vacate. Varan appealed the order. Without ruling on the merits, this court affirmed the trial court's finding that it lacked jurisdiction. *Kalmin v. Varan*, 2019 IL App (1st) 181437-U.

¶ 11       During the pendency of the appeal, Varan filed a motion asking the trial court to hold a hearing on JV's motion to quash the citation and stay the proceedings pending appeal. The trial court entered an order (i) denying Varan's motion to stay the proceedings, (ii) denying Varan's motion to quash the citation, and (iii) granting Kalmin's renewed motion for turnover of the Citibank funds.

¶ 12       After Citibank turned over the funds to Kalmin, JV filed a motion to reconsider the turnover order. JV argued for the first time that the trial court should have conducted an evidentiary hearing to determine whether Varan possessed an ownership interest in the Citibank funds. The trial court denied JV's motion to reconsider the denial of its motion to quash but granted its request for an evidentiary hearing to determine who owned the Citibank funds.

¶ 13       Varan was the only witness at the evidentiary hearing. According to the trial court's findings of fact, Varan established JV in 2013, as part of a series of limited liability companies. Varan testified that another limited liability company he controls, "LLC 1 Plus 1" (1 Plus 1), was the manager of JV. Varan asserted he is the sole member and manager of 1 Plus 1. The sole member of JV is the "Becky Trust," which Varan also established in 2013. Varan was the sole trustee of the Becky Trust and his wife, Rebecca Varan, its sole beneficiary. The trial court noted that Varan did not present documents to support his claim that the Becky Trust was the sole member of 1 Plus 1 or testimony from corroborating testimony from his wife. (Kalmin tried unsuccessfully to subpoena Rebecca Varan to testify.)

¶ 14       Varan testified that he was an agent for, but not an employee of, JV, which had no employees. Varan acknowledged that he performed a number of services for JV, including signing up members who needed legal representation and recruiting lawyers and law firms to represent members. But he said JV did not pay him for these services.

¶ 15    Varan opened an account with Citibank on behalf of JV in mid-September 2013. The Citibank account application identified the business as "LLC JV" and Varan as the primary contact. In addition, the application listed Varan's home as the business address. Varan acknowledged he was the only authorized signatory on and user of the Citibank account.

¶ 16    Kalmin introduced monthly statements for the Citibank account from September 2013 to August 2014, which the trial court said showed "staggering amounts" of cash withdrawals. Specifically, over $150,000 was withdrawn during those 12 months, often within a day or two after a similar amount had been deposited. The court found the Citibank statements also revealed additional direct payments to Rebecca Varan of $73,400 by check or wire transfer.

¶ 17    Varan testified that he withdrew cash from the Citibank account and gave it to his wife as the beneficiary of the Becky Trust and entitled to all profits from JV's business, even though she performed no work for JV and was not an officer, director, or employee. Varan stipulated that he turned over to Rebecca "95 percent or more" of all of the cash withdrawals from the Citibank account. He said the withdrawals were in cash rather than by check because the Becky Trust did not have a bank account. Varan took none of the $150,000 cash withdrawals for himself, but Rebecca gave him varying sums of money at her sole discretion.

¶ 18    After the evidentiary hearing, the trial court issued a memorandum opinion and order denying the motion to reconsider, finding that the money in the Citibank account belonged to Varan and was subject to turnover under section 2-1402. The court said it "had the opportunity to observe Varan and to make determinations about his credibility" and found his "explanation of the underlying facts, particularly those relating to the Citibank account activity, [were] convenient, self-serving, and totally lacking in credibility." The court concluded Varan established JV "to shield wages, income, and profits attributable to his efforts, time, and industry by simply (a) claiming not to receive compensation himself, (b) distributing JV's profits through cash withdrawals, some of which he kept for himself, and (c) funneling some of the JV's profits directly to his wife, Rebecca."

¶ 19    The court noted, "Rebecca Varan had no management, agency, or employment responsibilities for JV. *** By contrast. Varan and only Varan expended time, energy, effort, and industry to form and operate the business and affairs of JV. Yet, according to Varan, he neither received nor accepted any remuneration for these considerable services." The court found it "has every reason to believe that Varan's elaborate scheme to establish and operate JV *** was done by Varan for the exclusive purpose of shielding Varan's assets, income, and profits from Varan's creditors."

¶ 20    The trial court also rejected JV's contention that the Citibank citation was defective because Kalmin failed to serve it with a copy. The court found that Kalmin refuted this contention by providing a "true and correct copy of the Citation Notice executed by Kalmin's attorney." This certified that the attorney mailed by regular first class mail a copy of the Citibank citation notice to Varan at his home address within three business days of service on Citibank. Moreover, JV timely sought to intervene about a week after Citibank answered the citation and before Kalmin moved for a turnover of the Citibank funds, which supported a finding that Kalmin had served JV.

ANALYSIS

Standard of Review

The parties agree that we review under an abuse of discretion standard the trial court's decision to compel a judgment debtor to turn over funds in satisfaction of a judgment after an evidentiary hearing. *R&J Construction Supply Co. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 9. " 'A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court.' " (Internal quotation marks omitted.) *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 848 (2010) (quoting *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005)). To the extent that Varan contends the trial court erred in applying existing law, our review is *de novo*. *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 20.

Expiration of Citibank Citation

JV contends that the turnover order is void because the Citibank citation expired on February 13, 2015, six months after Citibank appeared and thus there was no pending citation order. For support, JV relies on language in Illinois Supreme Court Rule 277(f) (eff. Jan. 4, 2013), stating that

> "[a] proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner."

JV argues that the citation expired six months from the date the respondent, Citibank, filed an appearance, and was never extended, so nothing was pending before the trial court.

In addition to the language JV cites, Rule 277(f) states, "[t]he court may *** grant extensions beyond the 6 months, as justice may require." *Id.* "Nothing in the rule requires a party to seek or request an extension from the court in order to avoid termination. Rather, the rule allows the court to grant extensions…as justice may require." (Internal quotation marks omitted.) *Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d 189, 195 (7th Cir. 2008). The Seventh Circuit further said, "[b]oth state and federal courts construe Rule 277 liberally. We have not found examples of cases where a reviewing court found that a lower court's ruling was invalid as a result of Rule 277(f)'s operation." *Id.* at 194-95.

Thus, a creditor need not formally seek an extension for citation proceedings to extend, and, under Rule 277, a court, by continuing to entertain the citation proceedings, may extend the proceedings "as justice may require."

Further, JV's failure to file a motion to quash after it was granted leave in 2014 caused the lengthy elapse of time before entry of the turnover order. A court is not required to terminate a citation proceeding "at the insistence of an interested party whose complained-of error was the result of its own negligence." *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 40. JV is responsible for the delay.

Motion to Quash Citation

JV contends that the trial court should have granted its motion to quash because the Citibank citation was overly broad. Specifically, JV asserts that the citation sought information on accounts for which Varan was in title as well as accounts for which Varan had signatory

authority. JV cites no cases to support its contention. Indeed, courts have found that a creditor can seek to discover assets on accounts for which the judgment debtor has signatory authority. See *McGinley Partners, LLC v. Royalty Properties, LLC*, 2021 IL App (1st) 200390, ¶ 54 (corporation's bank accounts belonged to debtor, who was only authorized signatory on accounts and made all final decisions for corporation).

¶ 31    JV also contends that the trial court should have quashed the citation because Kalmin served Varan but failed to serve a copy of the citation on JV. Section 2-1402 states that

> "[w]henever a citation is served upon a person or party other than the judgment debtor, the officer or person serving the citation shall send to the judgment debtor, within three business days of the service upon the cited party, a copy of the citation and the citation notice, which may be sent by regular first-class mail to the judgment debtor's last known address. *** The citation notice need not be mailed to a corporation, partnership, or association." 735 ILCS 5/2-1402(b) (West 2020).

Kalmin was not obligated to serve the notice on JV but had to send a copy to Varan, the judgment debtor. Varan does not dispute the trial court's finding that Kalmin sent a copy to him at his home address within three business days of service on Citibank.

¶ 32                                                    Turnover Order

¶ 33    JV contends that the trial court erred in denying its motion to reconsider its turnover order because Kalmin failed to meet his burden to prove that the Citibank funds belonged to Varan rather than the Becky Trust. JV also argues that in ruling in Kalmin's favor, the trial court made an improper inference against JV because Varan's wife did not testify at the evidentiary hearing. Alternatively, Varan argues that Kalmin is not entitled to all the funds in the Citibank account and he should have been allowed to assert statutory exemptions.

¶ 34    Section 2-1402 allows a judgment creditor to begin supplementary proceedings against a third party to discover "assets belonging to the judgment debtor that the third party may have in its possession." *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 313 (1989); see 735 ILCS 5/2-1402(a) (West 2020). The judgment creditor has the burden of showing that the citation respondent has assets of the judgment debtor. *Pelczynski v. Dolatowski*, 308 Ill. App. 3d 753, 758 (1999). Before a judgment creditor may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses the judgment debtor's assets. *R&J Construction Supply Co.*, 2017 IL App (1st) 160778, ¶ 14 (citing *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002)). "The provisions of section 2-1402 are to be liberally construed, and the burden lies with the petitioner to show that the citation respondent possesses assets belonging to the judgment creditor." *Schak*, 334 Ill. App. 3d at 133.

¶ 35    A motion to reconsider brings to the court's attention (i) newly discovered evidence not available at the time of the hearing, (ii) changes in the law, or (iii) an error in the court's application of existing law. See *Williams v. Dorsey*, 273 Ill. App. 3d 893, 903 (1995). The moving party has the burden of establishing sufficient grounds to prevail on a motion to reconsider. *Day v. Curtin*, 192 Ill. App. 3d 251, 254 (1989).

¶ 36    According to JV, the trial court erred in denying the motion to reconsider because Varan testified that he was not a member of JV, that he did not receive compensation from JV, and that JV was a separate legal entity that held no assets belonged to him. JV asserts that the trial

court improperly "pierced the corporate veil" to find that the JV was Varan's alter ego despite this testimony.

¶ 37 The trial court, as finder of fact, sits in the best position to evaluate the conduct and demeanor of the witnesses. We give great deference to its credibility determinations and will not substitute our judgment for the trial court's. *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 47. We also defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 38 The trial court found that Varan's "explanation of the underlying facts, particularly those relating to the Citibank account activity, was convenient, self-serving, and totally lacking in credibility." The court also stated that neither JV nor Varan offered documentary evidence to corroborate Varan's testimony, such as a copy of the Becky Trust enabling documents or the JV enabling documents. Based on the evidence, the trial court concluded,

> "Varan established JV in order to shield wages, income, and profits attributable to his efforts, time, and industry by simply (a) claiming not to receive compensation himself, (b) distributing JV's profits through cash withdrawals, some of which he kept for himself, and (c) funneling some of the JV profits directly to his wife, Rebecca."

In short, the trial court concluded that Varan created JV to shield his assets, income, and profits from his creditors. The trial court was in the best position to evaluate Varan, the sole witness, and found him not credible. We will not disturb that finding.

¶ 39 We also reject Varan's contention that the trial court improperly pierced the corporate veil. A corporation is a distinct legal entity that exists separately from its shareholders, directors, and officers. *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 12. Under ordinary circumstances, shareholders, directors, and officers cannot be held liable for the corporation's debts. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005). But when a corporation " 'is merely the alter ego or business conduit of another person' " (*id.* (quoting *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 527 (2002))), such that the corporation is no more than a " 'dummy or sham' " for that individual, the court may pierce the veil of limited liability to hold that individual liable for the corporation's debts. *Id.* (quoting *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68 (1994)). The turnover order does not hold Varan personally liable for JV's debt, so it does not pierce the corporate veil.

¶ 40 JV asserts that the trial court made an improper adverse inference against it because it failed to produce Rebecca Varan as a witness to corroborate Varan's testimony. Specifically, JV points to a footnote in the court's opinion stating:

> "The Court also observes that neither JV nor Varan offered documentary evidence that might have corroborated Varan's version of the events and underlying facts, though presumably Varan would have had exclusive possession of or access to such documents (*i.e.*, the Becky Trust enabling documents; the LLC JV enabling documents detailing the Member(s) name{s}; etc.). In addition, it is curious that neither JV nor Varan made arrangements for Rebecca to offer corroborating testimony, despite that, if one accepts Varan's version of events, Rebecca and only Rebecca has a vested interest in the outcome of this motion.)"

¶ 41    In a civil proceeding, unlike a criminal proceeding, a party is required to testify or suffer the consequences—namely, that a trier of fact may draw adverse inference if a party refuses to testify. *Nasrallah v. Davilla*, 326 Ill. App. 3d 1036, 1044 (2001). An unfavorable evidentiary presumption also arises if a party, without reasonable excuse, fails to produce evidence under his or her control. *In re Marriage of Leff*, 148 Ill. App. 3d 792, 803 (1986); *Dollison v. Chicago, Rock Island & Pacific R.R. Co.*, 42 Ill. App. 3d 267, 277 (1976).

¶ 42    JV maintains that Rebecca Varan was not an officer, director, or employee of the LLC, so JV was not required to produce her at trial. See *In re Estate of Hoogerwerf*, 2012 IL App (4th) 110329, ¶ 14 (Illinois Supreme Court Rule 237(b) (eff. July 1, 2005), by its "clear and unambiguous" terms, does not allow court to order party to produce at trial person who is not at time of trial officer, director, or employee of that party). Further, JV argues that Kalmin had the burden to establish that JV had assets belonging to Varan (*Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 587 (1996)), and Kalmin's failure to secure her testimony should not be held against JV.

¶ 43    Kalmin had the initial burden to prove Citibank had assets belonging to Varan. *Pelczynski*, 308 Ill. App. 3d at 758. Kalmin satisfied that burden, and the court granted the turnover order. As noted, the moving party on a motion to reconsider has the burden of establishing sufficient grounds to prevail. *Day*, 192 Ill. App. 3d at 254. The evidentiary hearing granted in response to JV's motion to reconsider allowed JV to present newly discovered evidence that was not available at the time of the hearing and which would lead it to a different conclusion. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987 (1987).

¶ 44    At the hearing, Varan testified that the Becky Trust is the sole member of JV and that Rebecca Varan is the trust's sole beneficiary. But, as the trial court noted, he failed to provide a copy of the trust or other documentary evidence showing the trust exists, which would presumably be in his possession, as he claimed he created the trust. And if Rebecca Varan could corroborate Varan's testimony, one would reasonably presume Varan would have had her testify. So, the trial court could make an unfavorable evidentiary presumption based on the absence of corroborating documentary evidence or testimony from the trust's sole beneficiary.

¶ 45    Alternatively, JV contends that Kalmin was not entitled to all of the funds. Specifically, as the judgment debtor, Varan had the right to assert statutory exemptions of its income or assets that may not be used to satisfy the judgment. Section 2-1401(*l*) of the Code states that "[a]t any time before the return date specified on the citation, the judgment debtor may request, in writing, a hearing to declare exempt certain income and assets by notifying the clerk of the court before that time, using forms as may be provided by the clerk of the court." 735 ILCS 5/2-1402(*l*) (West 2020). Varan had the burden to assert an exemption before the return date; his failure dooms this argument.

¶ 46                                                    Sanctions

¶ 47    In his brief, Kalmin asks for sanctions under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) against JV, Varan, and their attorneys. This court may impose sanctions where

> "it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose." See *Bank of America, N.A. v Basile*, 2014 IL App (3d) 130204, ¶ 51.

- 8 -

In deciding frivolousness, we use an objective standard: Would a reasonably prudent attorney acting in good faith have brought the appeal? See Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989); *Parkway Trust & Bank Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87. The reviewing court has discretion in issuing sanctions. *Parkway Trust*, 2013 IL App (1st) 130380, ¶ 87.

¶ 48    Kalmin insists that this appeal was not brought in good faith and contains arguments (i) lacking any legal basis whatsoever, (ii) being raised for the first time on appeal, (iii) wanting of proper support by the record, or (iv) inconsistent to the facts. Kalmin also asserts that JV serves as a surrogate for Varan and suggests that JV brought this appeal to delay satisfying the judgment.

¶ 49    We agree with Kalmin on the unusual length of time this case has traveled. This is due, in part, to the automatic stay after Varan filed for bankruptcy and then the four-year delay after the removal from the bankruptcy stay calendar to the revival of the judgment. Varan may be attempting to delay paying the judgment, but we decline to impose sanctions based on the briefs and record on appeal. Although ultimately unsuccessful, we do not find JV's arguments amount to bad faith for an improper purpose.

¶ 50    Affirmed.